UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO

---

In re: Chapter 7

Suzanne Bair,

Debtor.

Case No. 1:18-bk-12585

---

Barestone, LLC,

And

Kingston Development Group, LLC

Plaintiffs

vs. Adversary Proceeding No.

Suzanne Bair,

Defendant-Debtor.

---

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 523 OF THE BANKRUPTCY CODE**

Plaintiff-Creditors Barestone, LLC ("Barestone") and Kingston Development Group ("Kingston") (collectively, "Plaintiff-Creditors"), through undersigned counsel, allege as follows for their Complaint against Defendant-Debtor Suzanne Bair ("Bair"):

## JURISDICTION

1. On July 3, 2018, Bair filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Ohio.

2. Bair's meeting of the creditors was set and duly noticed for August 8, 2018.

3. The meeting of the creditors did occur on August 8, 2018.

4. As of the date of this Complaint, Bair has not been granted a discharge.

5. This Complaint is timely because the date by which a complaint objecting to Bair's discharge or to determine dischargeability of a debt expires on October 9, 2018.

6. This is an adversary proceeding in which the Plaintiff-Creditors are seeking a determination as to the dischargeability of the debt owed by Bair to Plaintiff-Creditors under Bankruptcy Code §§ 523(a)(2), 523 (a)(4), and 523 (a)(6).

7. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code §523.

8. This case is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 157 (b)(2)(J).

## PARTIES

9. Barestone is a limited liability company organized under the laws of the State of Ohio, authorized to do business therein, and maintains its principal place of business at 2372 Madison Road, Unit W1C, Cincinnati, Ohio 45208.

10. Barestone is a creditor of Bair.

11. Kingston is a limited liability company organized under the laws of the State of Ohio and maintains its principal place of business at 2372 Madison Road, Unit W1C, Cincinnati,

Ohio 45208. Kingston is a 60% owner and presently is the managing member of Barestone. Until December 2016, Kingston was a silent investor in the Barestone development project described in this Complaint, during which time Barestone was managed by Bair Build Co., LLC ("Bair Build").

12. Kingston is a creditor of Bair.

13. Bair is the debtor in the above-captioned case and, at all times relevant to Plaintiff-Creditors' Complaint, resided at 1800 Tanglewood Drive, Loveland, Ohio 45140. On information and belief, Bair is a member of Bair Build. Bair operated Bair Build as her alter ego.

14. Bair, through her company, Bair Build, is a 40% owner of Barestone and, until December 2016, individually or through her son David Earl Bair a/k/a "DJ" Bair, acted as the managing member of Barestone.

15. Kingston and Bair Build formed Barestone in November 2015 for the primary intent and purpose of acquiring and developing real property located at 1531 and 1533 Republic Street, Cincinnati, Ohio 45202 in Over-the-Rhine (the "Project").

16. On or about November 27, 2015, Kingston and Bair Build executed an Operating Agreement governing the operation and management of Barestone, as well as their rights and responsibilities to each other as co-Members of the entity (the "Operating Agreement"). A true and accurate copy of this Operating Agreement is attached hereto as **Exhibit A**.

17. Pursuant to Section 6.1 of the Operating Agreement, Bair Build was designated to serve as the Managing Member of Barestone.

18. Barestone and its members intended for Bair Build to renovate and develop the Project and for Barestone to sell the properties purchased under the Project to third parties prior to development so that the properties could be developed to the buyers' specifications.

19. On or about June 30, 2015, Bair Build contracted with Chris Heinold and Kathleen Finn for the sale of 1531 Republic Street for $535,000. The buyers paid a ten percent (10%) deposit to be held as security and applied to the purchase price at closing. The deposit was paid to Bair Build.

20. On or about July 16, 2015, Bair Build contracted with Ravdeep Chanana and Sonia Guleria for the sale of 1533 Republic Street for $550,000. The buyers paid a ten percent (10%) deposit to be held as security and applied to the purchase price at closing. The deposit was paid to Bair Build.

21. For reasons unknown to Plaintiff-Creditors, the sale contracts for the Project were executed on behalf of Bair Build, even though Bair Build did not own the properties.

22. Upon execution of the purchase contracts, Bair Build received from the buyers the security deposits from 1531 Republic (in the amount of $53,500) and 1533 Republic (in the amount of $55,000), but failed to pay the security deposits over to Barestone despite Kingston's repeated demands.

23. Rather than holding the deposits as security, Bair and/or Bair Build (at her direction) converted the deposits for its own use or for the use of Bair and her son, David Earl Bair, Jr.

24. Bair Build, Barestone, and Kingston agreed that Bair Build was to develop the Project as general contractor with a construction budget not to exceed $776,000.

25. Bair and/or Bair Build (at her direction) represented to Plaintiff-Creditors that Bair Build had the ability and intention to complete the construction to the buyers' respective specifications within the agreed construction budget.

26. These representations were false at the time they were made.

27. In reliance upon these representations, Plaintiff-Creditors decided to move forward with the Project and took steps necessary to further the Project.

28. To finance the construction of the Project, Barestone obtained a construction loan on December 28, 2015 for approximately $672,000 from Union Savings Bank (the "Loan"). Approximately $660,000 of the Loan was available for disbursement and $630,000 was disbursed.

29. In order to fund the acquisition cost of the Project and the balance of the construction budget, each of the two members (Kingston and Bair Build) of Barestone made capital contributions of cash. Kingston, the 60% member, contributed $132,000 and Bair Build, the 40% member, contributed $88,000. Barestone used approximately $105,000 of the contributed capital to acquire the properties.

30. Kingston and, on information and belief, Barestone and Bair Build intended for the remaining capital of approximately $115,000, plus the funds available to be disbursed on the Loan in the amount of approximately $660,000, to fully fund the construction budget of $776,000.

31. Before construction work on the Project began in 2016, Bair Build provided Plaintiff-Creditors with line item budgets and a revised budget confirming that the project would be completed within the agreed not-to-exceed budget of $776,000.

32. In late 2015 or early 2016, Kingston realized that it had not yet received a copy of a formal written development agreement between Barestone and Bair Build and requested a copy.

33. Kingston received a document styled as a Development, Management, and Marketing Agreement dated January 15, 2016 (the "January 2016 Agreement") purportedly between Barestone and Bair Build. It was executed by David Earl Bair, Jr. on behalf of both Barestone and Bair Build. The January 2016 Agreement purported to be an accurate embodiment of the terms upon which Bair Build and Kingston had agreed. A true and accurate copy of the January 2016 Agreement is attached hereto as **Exhibit B**.

34. To the contrary, the January 2016 Agreement did not accurately include the terms to which Bair Build and Kingston had agreed. In addition to being inaccurate, the terms of the January 2016 Agreement were overly simple and self-serving to Bair, David Earl Bair, Jr., and Bair Build. It did not contain terms that would normally be included to protect a property owner in a development agreement and was not the product of an arm's length transaction. The January 2016 Agreement also was never properly approved and authorized by the members of Barestone.

35. Among other major deficiencies, the January 2016 Agreement did not contain any provisions concerning the agreed not-to-exceed construction budget of $776,000.

36. Construction on the Project began around January 2016. According to the purchase agreements executed by Bair Build, construction on each residence was required to be completed within 18 months of the date of the purchase agreements (December 30, 2016 for the property at 1531 Republic Street and January 16, 2017 for the property at 1533 Republic Street).

37. During the course of Bair Build's construction work on the Project in 2016, the information that Bair and/or Bair Build (through her direction) provided to Plaintiff-Creditors,

such as periodic financial statements and e-mails, indicated that the Project was on budget and on target to be completed by the respective contract deadlines. Plaintiff-Creditors have such emails in their possession, but they are too voluminous to attach to this Complaint.

38. The representations contained in these emails were false at the time they were made and induced Kingston to forbear taking any action regarding management of Barestone or the Project.

39. During the course of Bair Build's construction work on the Project in 2016, Bair and/or Bair Build prepared, executed, and delivered to Union Savings Bank progress payment affidavits. On information and belief, some of these affidavits contained inaccurate, misleading, and intentionally false, material representations of the progress of the construction. Further, on information and belief, these affidavits overstated and misrepresented the amount of progress that had been made in order to obtain draws on the Loan.

40. On information and belief, Bair and/or Bair Build (at her direction) were diverting money from the construction on the Project and using it for other projects unrelated to Barestone or for their own personal benefit. On information and belief, this diversion resulted in losses to Plaintiff-Creditors of not less than $147,700 in the misdirected deposits for the Project and for false and fraudulent charges against the Project that Bair and/or Bair Build (at her direction) wrongfully paid themselves.

41. On information and belief, Bair and Bair Build were also diverting money from the construction on the Project and making payments to Bair, her son David Earl Bair, Jr., and other Bair family members that were unauthorized by and unrelated to Barestone for their personal pecuniary gain. For example, Bair endorsed at least one check to "cash" in the amount of $39,272.15 from Barestone's account that was unauthorized and fraudulent because, upon

information and belief, Bair did not use these funds for the Project. A true and accurate copy of this check is attached as **Exhibit C.**

42. By late 2016, Kingston became concerned that the construction deadline was approaching and the construction on the Project was not yet complete.

43. On December 1, 2016, Bair and Bair Build provided written assurances to Plaintiff-Creditors that:

a. Construction would be substantially completed by December 31, 2016 so that the sale of the Project could be closed; and

b. Bair and/or Bair Build (at her direction) would provide regular email updates to Plaintiff-Creditors every Monday, Wednesday, and Friday until completion.

A true and accurate copy of the written assurances provided by Bair and Bair Build are attached hereto and incorporated herein as **Exhibit D**.

44. Bair Build also agreed to assume payment of the Loan if construction was not substantially complete by December 31, 2016, and to restructure distributions from Barestone to ensure that Kingston received a preferred distribution of its full capital investment of $132,000 prior to any other distribution being made and a preferred distribution of forty percent (40%) of the remaining proceeds before any other distributions were made from Barestone.

45. Bair and/or Bair Build never intended to assume payment of the Loan or to restructure distributions from Barestone as promised.

46. Kingston made several site visits to the Project in late 2016 and early 2017, and it was readily apparent to Kingston that Bair Build's work on the Project was unlikely to be completed on schedule.

47. Following the site visits in late 2016 and early 2017, Kingston began a deeper investigation into the construction on the Project.

48. Kingston discovered with respect to the construction on the Project that:

a. The construction had run at least $225,000 over the agreed not-to-exceed budget of $776,000;

b. The Loan was nearly fully drawn, and the Loan payments were not being made on time by Bair and/or Bair Build on behalf of Barestone;

c. significant work remained to be done on the Project;

d. the Project had incurred significant setbacks due to improper construction methods implemented by Bair Build and its and Bair's gross mismanagement of the Project;

e. the progress reports provided by Bair and/or Bair Build (at her direction) to Plaintiff-Creditors throughout the construction process were false, fraudulent, and purposefully inaccurate, including the omission of change orders, re-work, and inspection deficiencies that were intentionally omitted and concealed;

f. there were numerous unpaid subcontractors, some of whom had filed or would be filing mechanics' liens;

g. at least $80,000 was missing from the construction funding and purchase deposit monies for the sale of the Project's properties that could not be accounted for by Bair or Bair Build through supporting invoices or other supporting documentation; and

h. Bair and Bair Build had been "double dipping" on client upgrades by charging and collecting money from the buyers for various upgrades and also drawing money from the construction loan to pay for the upgrades.

49. In December 2016, Kingston removed Bair Build as the managing member of Barestone and appointed itself as the managing member.

50. Plaintiff-Creditors refrained from taking action against Bair or Bair Build at that time in reliance upon representations and assurances made by Bair and/or Bair Build at her instruction and direction.

51. Contrary to Bair and Bair Build's assurances, Bair and Bair Build did not provide regular email updates to Plaintiff-Creditors and the updates that they did provide were later shown to contain material misrepresentations of fact.

52. Contrary to Bair and Bair Build's assurances, neither of the properties under the Project was completed by December 31, 2016.

53. In light of its discoveries regarding the status of construction on the Project, in early 2017, Kingston demanded that Bair, Bair Build, and David Earl Bair, Jr. complete the construction on the Project using their own funds.

54. Bair, Bair Build, and David Earl Bair, Jr. failed and refused to complete the project using their own funds, despite that the budget over-run was exclusively attributed to their gross mismanagement of the project, misuse of the construction funds, and other wrongful acts.

55. Bair, Bair Build, and David Earl Bair, Jr. also failed to make the mortgage payments on the Loan after January 2017, despite the assurances made by Bair and/or Bair Build (at her direction). On information and belief, any payments made on the Loan after January 2017 were made by Barestone.

56. Based on the refusal and failure by Bair, Bair Build, and David Earl Bair, Jr. to complete the Project, Kingston took over management of construction on 1531 Republic Street, which was closer to completion. Kingston expended its own funds to complete construction and close on the property, which occurred in July 2017.

57. Kingston paid off numerous subcontractors of Bair Build, including subcontractors that had performed work on both 1531 and 1533 Republic Street, in order to facilitate the closing on 1531 Republic Street.

58. Prior to closing, Bair and/or Bair Build (at her direction) executed and delivered to Plaintiff-Creditors an affidavit in which Bair Build represented that all subcontractors who performed work on 1531 Republic Street had been paid off. After closing, Plaintiff-Creditors learned that this affidavit was false and that at least one subcontractor remained to be paid, whom Barestone paid.

59. At closing on the sale of 1531 Republic Street, Bair, Bair Build, and David Earl Bair, Jr. failed to deliver to Barestone the security deposit in the amount of $53,500, and therefore the sale proceeds paid to Barestone at closing were reduced by $53,500. Bair, Bair Build, and David Earl Bair, Jr. informed Plaintiff-Creditors that Bair Build had spent the security deposit for both properties under the Project and that it would not pay the deposit over to Barestone.

60. Plaintiff-Creditors filed a Complaint in the Hamilton County Court of Common Pleas related to the above facts on September 8, 2017, and an Amended Complaint was filed on September 10, 2018, in Case No. A 1704728. A true and accurate copy of Plaintiff's Amended Complaint is attached hereto as **Exhibit E**.

61. This Complaint and Amended Complaint further details the wrongful actions by Bair and Bair Build, and these allegations are incorporated by reference as if fully restated herein.

62. As detailed in the Amended Complaint, upon information and belief, Bair has formed an entity, Rafterhaus Construction LLC, to which she has funneled assets, including but not limited to, the money she stole from Plaintiff-Creditors.

63. Bair has also fraudulently transferred assets owned by her and Bair Build, and which could be used to satisfy any judgment Plaintiff-Creditors might obtain, to this entity so as to hide them and hinder Plaintiff-Creditors' collection against such assets.

**COUNT I - NON-DISCHARGEABILITY OF PLAINTIFF-CREDITORS' CLAIMS UNDER § 523(a)(2)(A) OF THE BANKRUPTCY CODE**

64. Plaintiff-Creditors incorporate by reference and reallege, as if fully rewritten herein, all preceding allegations contained in their Complaint.

65. Bankruptcy Code § 523(a)(2)(A) provides, in pertinent part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing for credit, to the extent obtained by-
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

66. All or a substantial part of the debt owed to Plaintiff-Creditors, as evidenced by the facts alleged above and in Plaintiff-Creditors' Complaints in the Hamilton County Common Pleas Court Action in Case Number A 1704728, is a non-dischargeable debt due to false pretenses, a false representation, or actual fraud.

67. Bair, individually and as the managing member of Bair Build, a member of Barestone and thus a fiduciary as to Kingston, made, or instructed David Earl Bair, Jr. to make,

several material misrepresentations to Plaintiff-Creditors, which Bair knew to be false at the time the representations were made, or which statements were made with gross recklessness as to its truth, including but not limited to: (1) that, before the project even began, that Bair and Bair Build had the knowledge and ability to handle the construction of the Project; (2) that, as construction was occurring, Bair and Bair Build were on time and on budget; (3) that, during each progress report or withdrawal, Bair and Bair Build were using all funds received by Barestone solely for the Projects; and (4) that, despite Bair's alleged proper use of the funds, additional funding was needed from Kingston in order for the Projects to be completed.

68. Bair, individually and as the managing member of Bair Build, a member of Barestone and thus a fiduciary as to Kingston, engaged in behavior, or instructed David Earl Bair, Jr. to engage in behavior, that, when considered in the totality of the circumstances demonstrates the intent to lull Plaintiff-Creditors into inaction through implied and express misrepresentations and/or conduct meant to foster a false impression that Bair and Bair Build were properly managing the Project when, in fact, Bair and/or Bair Build (through Bair's direction) was misappropriating Barestone's assets for her own direct benefit or indirect benefit through use by Bair Build, her other LLC.

69. These implied misrepresentations and conduct include, but are not limited to: (1) that, before the project even began, that Bair and Bair Build had the knowledge and ability to handle the construction of the Project; (2) that, as construction was occurring, Bair and Bair Build were on time and budget; (3) that, during each progress report or withdrawal, Bair and Bair Build were using all funds received by Barestone solely for the Project; and (4) that, despite Bair's alleged proper use of the funds, additional funding was needed from Kingston in order for the Projects to be completed.

70. Bair's statements and actions are fraudulent because at the time they were made, or the action was taken, Bair and/or Bair Build (through Bair's direction) knew those statements to be false, fraudulent, and inaccurate. So, (1) Bair and/or Bair Build never had the knowledge and ability to handle the construction of the Project; (2) at the times Bair and/or Bair Build represented to Plaintiff-Creditors that the Project was proceeding on time and on budget, Bair and/or Bair Build knew that the Project was not on time and not on budget; (3) Bair and/or Bair Build knew as it provided progress reports (which contained material misrepresentations) and withdrew Loan funding it was not using these funds for the Project and were instead diverting such funds to herself or others unrelated to the Project; and (4) that additional funding was needed from Kingston only because of the fraudulent behavior of Bair and/or Bair Build.

71. Bair herself misappropriated funds from Barestone, including but not limited to writing a check to "cash" in the amount of $39,272.15. Furthermore, other funds are missing from Barestone's accounts, and because Bair had primary access to such accounts through her management, or lack thereof, and in light of her past behavior relating to Plaintiff-Creditors and this Project, it is plausible that she also misappropriated this money.

72. Bair's behavior, as set forth here and in Plaintiff-Creditors' Complaints in the Hamilton County Common Pleas Court Action in Case Number A 1704728 involves moral turpitude and intentional wrong.

73. Bair obtained this money and benefitted from it, directly or indirectly through her membership of Bair Build, through her fraudulent misrepresentations, false pretenses, and actual fraud.

74. Bair's actions were done with the intent to deceive Plaintiff-Creditors and to willfully take advantage of them.

75. Given that Bair, through her role in Bair Build, had a fiduciary duty to Kingston, as the other member of Barestone, and that Bair was in a superior position by having more knowledge regarding the construction activities at the Project, Plaintiff-Creditors were justified in relying on the statements Bair made as described above.

76. Plaintiff-Creditors have suffered a loss as a result of Bair's fraudulent behavior. Although Plaintiff-Creditors require discovery to determine the exact amounts of their losses, the losses are at least $147,772.

77. Additionally, Bair engaged in a scheme to hide her assets (and any assets of Bair Build) by fraudulently conveying them to her new entity, Rafterhaus Construction LLC, with the intent to delay or hinder Plaintiff-Creditors' collection of assets.

78. These fraudulent conveyances have caused further harm to Plaintiff-Creditors.

## COUNT II - NON-DISCHARGEABILITY OF PLAINTIFF-CREDITORS' CLAIMS UNDER § 523(a)(2)(B) OF THE BANKRUPTCY CODE

79. Plaintiff-Creditors incorporate by reference and reallege, as if fully rewritten herein, all preceding allegations contained in their Complaint.

80. Bankruptcy Code § 523(a)(2) provides, in pertinent part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing for credit, to the extent obtained by-
>
> . . .
>
> (B) use of a statement in writing-
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive ...

81. All or a substantial part of the debt owed to Plaintiff-Creditors, as evidenced by the facts alleged above and in Plaintiff-Creditors' Complaints in the Hamilton County Common Pleas Court Action in Case Number A 1704728, is a non-dischargeable debt due to use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied and that the debtor caused to be made or published with intent to deceive within the meaning of Bankruptcy Code § 523(a)(2).

82. In this case, Bair and/or Bair Build (at her direction) provided written affidavits to Union Savings Bank that contained materially false statements concerning the financial condition of Barestone to induce Union Savings Bank to release additional funds to Barestone on the Loan, further indebting Barestone and ultimately Kingston.

83. Barestone and Kingston were harmed by these actions because Bair and/or Bair Build (at her direction) withdrew all available funds under the Loan, leaving Barestone with no funds to complete the Project. As a result, Kingston was required to use its own funds to complete the Project.

84. Union Savings Bank reasonably relied on these affidavits in deciding to release additional funds to Barestone, which funds were to be used solely on the Project.

85. Plaintiff-Creditors also reasonably relied on these affidavits in deciding to forbear and not exercise any oversight or management over Bair, Bair Build, Barestone, and/or the Project.

86. Bair and/or Bair Build (at her direction) intended to deceive Union Savings Bank and Plaintiff-Creditors through these affidavits.

87. Similarly, Bair and/or Bair Build (at her direction) used written emails provided to Kingston, which included statements that were materially false regarding the financial condition of Barestone, which induced Kingston not to further engage in the Project and/or Barestone and not to exercise more oversight over the Project and/or Bair and/or Barestone.

88. Kingston reasonably relied upon these representations in forbearing any actions pertaining to oversight or management of Barestone, ultimately harming Kingston and Barestone because Bair and/or Bair Build (at her direction) withdrew all available funds under the Loan, leaving Barestone with no funds to complete the Project. As a result, Kingston was required to use its own funds to complete the Project.

89. Bair and/or Bair Build (at her direction) intended to deceive Plaintiff-Creditors through these email updates.

**COUNT III - NON-DISCHARGEABILITY OF PLAINTIFF-CREDITORS' CLAIMS UNDER § 523(a)(4) OF THE BANKRUPTCY CODE**

90. Plaintiff-Creditors incorporate by reference and reallege, as if fully rewritten herein, all preceding allegations contained in their Complaint.

91. Bankruptcy Code § 523(a)(4) provides, in pertinent part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> ...
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ...

92. All or a substantial part of the debt owed to Plaintiff-Creditors, as evidenced by the facts alleged in Plaintiff-Creditors' Complaints in the Hamilton County Common Pleas Court Action in Case Number A 1704728, is a non-dischargeable debt due to fraud, defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code § 523(a)(4).

93. Bair had authority to access the Barestone funds for use solely in the Project.

94. However, Bair used the Barestone funds for other uses, including her own benefit and the benefit of David Earl Bair, Jr., Bair Build, and her new entity, Rafterhaus, all of which provided her with an indirect benefit.

95. Bair's unauthorized conduct was done in circumstances indicating fraud, as she had superior knowledge to that of Plaintiff-Creditors and stole funds without Plaintiff-Creditors' knowledge, all the while representing that the Project was on time and on budget.

96. Additionally, Bair had access to other money to which she never had a right, yet she stole it as well, supporting a claim of larceny.

97. Bair, individually and through her entity Bair Build, had no right to the security deposits paid by the buyers of the Project's properties.

98. Nonetheless, Bair and/or Bair Build (at her direction), took possession of these deposits without permission from Barestone, the owner of the properties in the amount of $108,500.

99. Bair and/or Bair Build then took these deposits and used them for their own direct or indirect benefit.

100. These actions were done in circumstances indicating fraud, as Bair never informed Barestone or Kingston of the taking, nor supported the theory that they used these deposits on the Republic Street properties.

**COUNT IV - NON-DISCHARGEABILITY OF PLAINTIFF-CREDITORS' CLAIMS UNDER § 523(a)(6) OF THE BANKRUPTCY CODE**

101. Plaintiff-Creditors incorporate by reference and reallege, as if fully rewritten herein, all preceding allegations contained their Complaint.

102. Bankruptcy Code § 523(a)(6) provides, in pertinent part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> . . .
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...

103. All or a substantial part of the debt owed to Plaintiff-Creditors, as evidenced by the facts alleged in Plaintiff-Creditors' Complaints in the Hamilton County Common Pleas Court Action in Case Number A 1704728, is non--dischargeable as it is a debt for willful and malicious injury caused by Defendant-Debtor Bair within the meaning of Bankruptcy Code § 523(a)(6).

104. Bair, individually and through her role in Bair Build, injured Plaintiff-Creditors by stealing funds from them and using these funds for purposes other then their intended use, including for her own benefit and the benefit of her family and other entities.

105. Bair's actions were willful because she knew she had authority to use Plaintiff-Creditors' funds only for the Project, yet she completely ignored such bounds and used the funds as she saw fit for her personal benefit and the benefit of David Earl Bair, Jr., a/k/a "DJ" Bair. Bair knew that her actions would be detrimental to the Project.

106. Bair's actions were not only willful but also malicious, because Bair had no justification or excuse for her actions.

107. Bair's actions caused material harm to Plaintiff-Creditors, because as a result of Bair's actions, Plaintiff-Creditors were required to use additional, personal funds to complete the Project that Bair and/or Bair Build (at her direction) had fraudulently managed and stolen from.

WHEREFORE, Plaintiff-Creditors respectfully request that this Court enter a judgment determining that the debt owed by Bair in favor of Plaintiff-Creditors, in an amount not less than $200,000.00 plus reasonable interest, is non-dischargeable under Bankruptcy Code §§ 523(a)(2),

523(a)(4), 523(a)(6) and granting Plaintiff-Creditors such other and further relief as this Court may deem just, proper, and equitable.

Respectfully submitted,

*s/ Brian R. Redden*

Brian R. Redden (Ohio Bar No. 0070610)
Christen M. Steimle (Ohio Bar No. 0086592)
Buechner Haffer Meyers & Koenig Co., LPA
105 E. Fourth Street, Suite 300
Cincinnati, Ohio 45202
Phone: (513) 579-1500
Fax: (513) 977-4361
Email: bredden@bhmklaw.com
csteimle@bhmklaw.com
***Counsel for Plaintiff-Creditors***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on October 9, 2018 and shall be served upon all counsel of record via e-mail and through this Court's CM/ECF filing system and, if not represented, to the party's address of record on the creditor matrix in this action attached to Defendant-Debtor's Petition.

*s/ Brian R. Redden*

Brian R. Redden
***Counsel for Plaintiff-Creditors***