# Exhibit B



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

### ELECTRONICALLY FILED
### December 13, 2017 08:51 AM
### AFTAB PUREVAL
### Clerk of Courts
### Hamilton County, Ohio
### CONFIRMATION 682734

**UNION SAVINGS BANK**                         A 1706729

**vs.**

**BARESTONE LLC**

## FILING TYPE:  INITIAL FILING (FORECLOSURE-IN COUNTY)
## PAGES FILED: 23

EFR200



EXHIBIT

B

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| UNION SAVINGS BANK<br>8534 East Kemper Road<br>Cincinnati, OH 45249 | CASE NO. |
| Plaintiff, | Judge |
| vs. | |
| BARESTONE, LLC<br>c/o Brian J. Hirsch, Registered Agent<br>105 E. Fourth Street, Suite 300<br>Cincinnati, OH 45202<br>**SERVE VIA CERTIFIED MAIL** | COMPLAINT IN FORECLOSURE |
| and | |
| SPEEDCO CONSTRUCTION LLC DBA<br>SPEEDCO ROOFING AND METAL WORK<br>National Registered Agents, Inc., Statutory<br>Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br>**SERVE VIA CERTIFIED MAIL** | |
| and | |
| STEEL IT, LLC<br>Kyle Freeman, Statutory Agent<br>1374 Gumbert Drive<br>Amelia, OH 45102<br>**SERVE VIA CERTIFIED MAIL** | |
| and | |
| BAIR BUILD COMPANY LLC AKA BAIR<br>BUILD CO.<br>Suzanne Bair, Statutory Agent<br>1706 John St.<br>Cincinnati, OH 45214<br>**SERVE VIA CERTIFIED MAIL** | |
| Defendants. | |

1

Count One

1.     Plaintiff is the holder of a Promissory Note and Mortgage in the original amount of $672,000.00 copies of which are attached hereto as Exhibit A and Exhibit B and hereby made a part hereof.

1.     On November 17, 2017, in the Hamilton County Common Pleas Court, case captioned *Union Savings Bank vs. Barestone, LLC, et al.*, Case No. A1705978, Union Savings Bank ("Plaintiff") recovered a judgment on the Promissory Note in the amount of $290,847.33, together with interest at an adjustable rate, with the current rate of 5.250% per annum (as may be adjusted by the terms of the Promissory Note) from July 1, 2017 until paid in full, plus court costs, advances and other charges, as allowed by law, against Barestone, LLC, David Bair Jr. aka D.J. Bair and Suzanne Bair.

2.     On November 20, 2017, Plaintiff caused to be filed in the office of the Hamilton County Common Pleas Clerk of Courts a certificate of such judgment, which certificate was duly file and docketed as Certified Judgment document number CJ17022744. A copy of the certificate of judgment is attached hereto as Exhibit C.

3.     Plaintiff now seeks to foreclose on its Mortgage and Certificate of Judgment.

Count 2

4.     The conditions of defeasance contained in the Mortgage, attached as Exhibit B, have been broken, and Plaintiff is entitled to have its Mortgage foreclosed and all liens and other interests marshaled.

5.     The Mortgage was filed for record January 4, 2016 in O.R. Book 13074, Page 50 of the records of the Hamilton County, Ohio Recorder. Subject to unpaid real estate taxes and assessments, its Mortgage constituted a valid first lien upon the real property described therein,

2

commonly known as 1533 Republic Street, Cincinnati, OH 45202.

2.      Plaintiff further says that pursuant to the covenants and conditions of said mortgage deed

it may, from time to time during the pendency of this action, advance sums to pay real estate taxes,

hazard insurance premiums and property protection and maintenance.

3.      Barestone, LLC may claim an interest or right in the real property by virtue of being the

current title-holder, which interest it should set forth or be forever barred from asserting.

4.      The Hamilton County Treasurer may have an interest in the real estate which is the subject

of this Complaint, which interest is protected as a matter of law.

5.      The Preliminary Judicial Report is attached to this Complaint as Exhibit D refers to other

persons, if any, who are named as defendants in this action. Said other persons are named as

defendants in this action solely because they may have or claim an interest in the property.

        WHEREFORE, Plaintiff demands a finding of default, that Plaintiff's Mortgage be

adjudged a valid first lien upon the real estate described therein, and that said Mortgage be

foreclosed; and that said real property be ordered sold free and clear of all liens and the amount

found to be due the Plaintiff be paid out of the proceeds of such Sheriff's Sale; and for such other

and further relief, legal and equitable in nature, as may be proper and necessary; and that all of the

defendants be required to set up their liens or interest in said real estate or be forever barred from

asserting the same.

                                        Respectfully submitted,


                                        /s/ Santina O. Vanzant
                                        Santina O. Vanzant (0080752)
                                        Union Savings Bank
                                        8534 E. Kemper Road
                                        Cincinnati, Ohio 45249
                                        Telephone: (513) 605-1254
                                        Fax: (513) 489-1224
                                        svanzant@usavingsbank.com


                                                                                3



# CONSTRUCTION LOAN
## PROMISSORY NOTE

$672,000.00                    DECEMBER 28, 2015

Cincinnati, Ohio

On JANUARY 1, 2017 (the "Maturity Date"), the undersigned (the "Borrower"), who if two or more jointly and severally, promises to pay to the order of UNION SAVINGS BANK (the "Bank") at its main office the lesser of SIX HUNDRED SEVENTY TWO THOUSAND AND NO/100 and Dollars $(672,000.00) or the amount of all advances made by Bank to Borrower under the terms and conditions of this Construction Loan Promissory Note ("Note"), Residential Construction Loan Disbursement Agreement and Open End Mortgage dated of even date herewith (the "Loan Documents"). This Note may be declared forthwith due and payable in the manner and with the effect provided in the Loan Documents, which contains provisions for acceleration of the maturity hereof upon the happening of any Event of Default. This Construction Loan Promissory Note is the Note referred to in the Loan Documents. Any conflict between the Note and Loan Documents shall be resolved in favor of the Note.

Borrower also promises to pay to the order of Bank at its main office the amount of all interest upon all advances at the rate hereinafter set forth. Accrued interest shall be due and payable on the 1st date of each month and on maturity. The principal amount outstanding shall be due and payable on maturity.

Prior to and on maturity, interest shall accrue upon the daily principal balance of this Note (on the basis of a 365-day year for the actual number of days) at a rate per annum equal to the Prime Rate plus 1.00% percent ( ONE PERCENT ). Prime Rate means that interest rate as published in The Wall Street Journal ("WSJ") as of the date of this Note ("WSJ Prime Rate"). The Prime Rate will be adjusted daily as the WSJ Prime Rate changes in an amount equal to the change in the WSJ Prime Rate. If more than one WSJ Prime Rate is published, the highest such rate published shall apply; and on any day when the WSJ Prime Rate is not published, the Prime Rate shall be the WSJ Prime Rate published on the last day on which such rate is published prior to such day. In the event the WSJ discontinues the WSJ Prime Rate, Bank shall select another index and provide prior notice of the name of the new index and in what publication the new index can be found. Borrower acknowledges and agrees that the WSJ Prime Rate is not represented or intended to the lowest or most favorable rate offered by Bank to any of its borrowers. After maturity, interest shall accrue upon the daily principal balance of this Note for the actual number of days elapsed since maturity at a rate per annum equal to the Prime Rate plus three percent (3.00%), but not to exceed to maximum rate permitted by law. The Borrower may prepay this note in whole or in part at any time. All prepayments shall be applied to the monthly installments in the reverse order of their due dates. Notwithstanding anything to the contrary hereinabove the rate of interest payable shall never decrease below 4.250%.

Prior to maturity, if Borrower shall fail to pay any sum of principal or interest when due Borrower shall pay Bank, in addition to the interest charged hereunder, a late fee in an amount equal to five percent (5.00%) of such sum.

Bank is authorized to make, from time to time and based upon Bank's records, notations on its records as to the date and amount of each advance, the date and amount of each payment of principal and interest received by Bank, the principal balance of this note, and the date to which interest has been paid.

Borrower shall be in default under this Note if at any time (a) Borrower fails to pay any amount on this Note as scheduled, or (b) subject to any applicable grace period, an Event of Default shall occur under the Loan Documents.

At any time during the continuance of any default under this Note, at the option of Bank and without any notice to or demand upon Borrower: (a) this Note shall become immediately due and payable and (b) Bank shall not be obligated to make any further advances. After maturity (whether by acceleration or otherwise), any attorney-at-law is irrevocably authorized to (a) appear for Borrower in any state or federal court of record, (b) waive the issuance and service of process, all errors, and all rights of appeal and stay of execution, and (c) confess judgment against borrower in favor of Bank for the principal balance of this Note, the amount of all unpaid accrued interest, the amount of all costs of suit, and the amount of a reasonable attorney's fee. These authorizations shall survive any judgment(s) and any

1

vacation of any judgment(s). Borrower agrees that Bank's attorney may confess judgment pursuant to the foregoing warrant of attorney. Borrower further agrees that the attorney confessing judgment pursuant to the foregoing warrant of attorney may receive a legal fee or other compensation from Bank. Borrower shall promptly reimburse Bank for all reasonable costs and expenses (including, but not limited to, attorney fees) incurred by Bank in pursuing its rights hereunder.

Any request notice, or demand by or on behalf of Bank, when delivered, or deposited for delivery, postage prepaid, by certified or registered United States Mail to Borrower at Borrower's address set forth below, shall constitute, but shall not preclude other means of, an effective request, notice, or performance, default, or enforcement of this Note (including, without limitation, presentment, and notice of dishonor). All provisions of this note shall be governed by and interpreted in a manner consistent with applicable Ohio and United States law. Unenforceability of any provision or any application of any provision of this Note in any jurisdiction shall not affect the enforceability of such provision or such application in any other jurisdiction or of any other provision or any other application of any other provision of this note in any jurisdiction.

WAIVER OF JURY TRIAL:  BORROWER AND BANK HEREBY JOINTLY AND SEVERALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATED TO THIS NOTE AND TO ANY OF THE LOAN DOCUMENTS, THE OBLIGATIONS HEREUNDER OR THEREUNDER, ANY COLLATERAL SECURING THE OBLIGATIONS, OR ANY TRANSACTION ARISING THEREFROM OR CONNECTED THERETO. BORROWER AND BANK EACH REPRESENTS TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

WARNING: BY SIGNING THIS PAPER, YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.

Borrower's Address:                    Borrower  BARESTONE, LLC
                                       AN OHIO LIMITED LIABILITY COMPANY

                                       By
                                          DAVID (D) BAIR, JR.
                                          AUTHORIZED REPRESENTATIVE

                                       Borrower

                                       By
                                          DAVID BAIR, JR., INDIVIDUALLY

                                       By:
                                          DAVID BAIR, INDIVIDUALLY

                                       By:
                                          SUZANNE BAIR, INDIVIDUALLY

2

Wayne Coates
Hamilton County Recorders Office
Doc #: 16-0000009 Type: MT
Filed: 01/04/16 07:07:42 AM  $100.00
S1074   00050   F S63 11    9

## OPEN-END MORTGAGE, ASSIGNMENT OF RENTS
## AND SECURITY AGREEMENT
### (Commercial Property)

b1307400050Fb

NON-CONFORMING DOCUMENT
ADDITIONAL RECORDING FEE
(ORC 317 114)

THIS MORTGAGE ("Mortgage Agreement") is made this **28th** day of **December, 2015** between the mortgagor, **BARESTONE, LLC.**, an Ohio Limited Liability Company ("Borrower") and the mortgagee, **UNION SAVINGS BANK**, an Ohio Corporation with an address at 8534 E. Kemper Road, Cincinnati, OH 45249 ("Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of **SIX HUNDRED SEVENTY TWO THOUSAND AND 00/100 Dollars ($672,000.00)** which indebtedness is evidenced by Borrower's note or notes of even date herewith (collectively, "Promissory Note"). **MATURITY DATE JANUARY 1, 2046.**

TO SECURE TO LENDER (a) the repayment of the indebtedness and performance of the covenants and agreements evidenced by the Promissory Note, and all renewals, extensions, modifications, and reamortizations thereof, notwithstanding that such renewals, extensions, modifications, and reamortizations may be evidenced by a note or notes signed and dated after the date hereof; (b) the payment of all other sums with interest thereon advanced in accordance herewith to protect the security of this Mortgage Agreement; (c) the repayment of any future advances, with interest thereon; (d) the performance by Borrower under any Loan Agreement or Construction Loan Agreement between the Borrower and the Bank ("Loan Agreement") and under any other documents and instruments now or in the future given to the Lender to evidence or secure the loans hereunder (together with the Promissory Note and the Loan Agreement collectively, the "Loan Documents"); and (e) the performance of the covenants and agreements of Borrower herein contained (collectively, the "Indebtedness"), Borrower does hereby mortgage, grant, convey, and assign to Lender the following described property:

### See Exhibit A

TOGETHER, with all buildings, improvements, structures, and tenements now situated or hereafter erected on said premises, and all heretofore or hereafter vacated alleys and streets abutting said premises, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to said premises, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or about said premises, or used or intended to be used in connection with said premises, or intended and designated (wherever located) to be incorporated into the structure(s) situated on said premises, including without limitation fixtures and equipment for supplying or distributing heating, cooling, electricity, gas, water, sewage, air and light, elevators and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, mirrors, cabinets, paneling, unattached rugs, carpet and other attached floor coverings, antennas, trees and plants, and all other property now owned or hereafter acquired and used in or about the above-described premises; all of which, including replacements and additions thereto, being hereby deemed a part of the premises encumbered by this Mortgage Agreement and being hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, convey and assign the Property, that the Property is unencumbered excepting easements, restrictions, covenants, conditions and legal highways of record, and real estate taxes and assessments not yet due and payable, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, whatsoever.

Borrower and Lender covenant and agree as follows:

**EXHIBIT**

**B**

Rev. 8/2/2007

1.    **PERFORMANCE OF OBLIGATIONS.**  Borrower shall promptly pay when due the principal of and interest on the Indebtedness, any late charges provided in the Indebtedness, and all other sums secured by this Mortgage Agreement and shall comply with the terms and obligations of the Loan Documents.

2.    **APPLICATION OF PAYMENTS.**  Unless applicable law provides otherwise, all payments received by Lender from Borrower shall be applied by Lender in the following order or priority: (a) interest payable on the Indebtedness; (b) escrow and late fees; (c) principal of the Indebtedness; (d) interest and principal payable on advances made pursuant to paragraph 7 hereof; and (e) any other sums secured by this Mortgage Agreement in such order as Lender, at Lender's option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to paragraph 7 hereof prior to interest on and principal of the Indebtedness, but such application shall not otherwise affect the order of priority of application specified in this paragraph 2.

3.    **CHARGES; LIENS.**  Borrower shall pay all water and sewer rates, rents, taxes, assessments, premiums, and other impositions attributable to the Property directly to the payee thereof, or in such other manner as Lender may designate in writing.  Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and Borrower shall promptly furnish to Lender receipts evidencing such payments.  Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Mortgage Agreement excepting taxes and assessments, not yet due and payable, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property.  Without Lender's prior written permission, Borrower shall not allow such lien, encumbrance, or other interest in the Property excepting leasehold interests contemplated hereunder inferior to the lien of this Mortgage Agreement to be perfected against the Property.

4.    **HAZARD INSURANCE.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times satisfactory to Lender against loss by fire, hazards included within the term "extended coverage," and such other hazards, casualties, liabilities and contingencies as Lender shall reasonably require and in such amounts and for such periods as Lender shall reasonably require.

All insurance policies and renewals thereof shall be in a form reasonably acceptable to Lender and shall include a standard mortgagee clause in favor of and in form reasonably acceptable to Lender.  Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums.  At least thirty (30) days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form reasonably satisfactory to Lender.

In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender.  Borrower shall be empowered to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies subject to Lender's written consent; provided, however, that nothing contained in this paragraph shall require Lender to incur any expense or take any action hereunder.  Borrower further authorize Lender, at Lender's option, (a) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property or (b) to apply the balance of such proceeds to the payment of the sums secured by this Mortgage Agreement, whether or not then due, in the order of application set forth in paragraph 2 hereof.

If the insurance proceeds are held by Lender to reimburse Borrower for the cost of restoration and repair of the Property such proceeds shall be made available to the Borrower and the Property shall be restored to the equivalent of its original condition or such other condition as Lender may approve in writing not to be unreasonable withheld.  Lender may, at Lender's option, condition disbursement of said proceeds on Lender's approval of such plans and specifications of an architect satisfactory to Lender, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as

Lender may reasonably require. If the insurance proceeds are applied to the payment of the sums secured by this Mortgage Agreement, any such application of proceeds to principal shall not extend or postpone the due dates of the monthly installments referred to in paragraph 1 hereof or change the amounts of such installments. If the Property is sold pursuant to paragraph 22 hereof or if Lender acquires title to the Property, Lender shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

5.    **PRESERVATION AND MAINTENANCE OF PROPERTY.** Borrower (a) shall not commit waste or permit impairment or deterioration of the Property, (b) shall not abandon the Property, (c) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender any approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (d) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (e) shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property, and (f) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Mortgage Agreement or the rights or powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

6.    **USE OF PROPERTY.** The Property is intended for commercial use. Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Mortgage Agreement was executed. Borrower shall not initiate or participate in a change in the zoning classification of the Property without Lender's prior written consent which shall not be unreasonably withheld.

7.    **PROTECTION OF LENDER'S SECURITY.** If Borrower fails to perform the covenants and agreements contained in this Mortgage Agreement, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, building code enforcement, insolvency or arrangements or proceedings involving a bankrupt or decedent, then Lender, at Lender's option, may make such appearances, disburse such sums and take such action as Lender deems necessary, to protect Lender's interest, including, but not limited to, (a) disbursement of attorney's fees, (b) entry upon the Property to make repairs, and (c) procurement of satisfactory insurance as provided in paragraph 4 hereof.

Any amounts disbursed by Lender pursuant to this paragraph with interest thereon, shall become additional Indebtedness of Borrower secured by this Mortgage Agreement. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Promissory Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenant and agree that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Indebtedness secured hereby. Nothing contained in this paragraph shall require Lender to incur any expense or take any action hereunder.

8.    **INSPECTION.** Lender shall have the right to enter the Property at any reasonable time for the purpose of making inspections of the Property and of the conduct of operations and activities on the Property. The Lender may enter the Property (and cause the Lender's employees, agents and consultants to enter the Property), upon prior written notice to the

Borrower, to conduct any and all environmental testing deemed appropriate by the Lender in its sole discretion.

9.      **BOOKS AND RECORDS.**  Borrower shall keep and maintain at all times complete and accurate books of accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other Mortgages which affect the Property.  Such books, records, contracts, leases and other Mortgages shall be subject to examination and inspection at any reasonable time by Lender but no more than once per calendar year.  Upon Lender's request, Borrower shall furnish to Lender, within forty-five days after the end of each calendar year of Borrower, a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower.  Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the Property, certified by Borrower, showing the name of each tenant and for each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid.

10.     **CONDEMNATION.**  Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall, and Lender, at its option, may appear in and prosecute any such action or proceedings.  The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Mortgage Agreement, whether or not then due, in the order of application set forth in paragraph 2 hereof, with the balance, if any, to Borrower.  Unless Borrower and Lender otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments.  Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

11.     **BORROWER AND LIEN NOT RELEASED.**  From time to time, Lender may, upon obtaining the consent of Borrower, which shall not be unreasonably withheld extend the time for payment of the Indebtedness or any part thereof, reduce the payments thereon, release anyone liable thereon, accept a renewal note or notes therefore, modify the terms and time of payment of, release from the lien of this Mortgage Agreement any part of the Property, reconvey any part of the Property, consent to any survey or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, or agree in writing with Borrower to modify the rate of interest or period of amortization of the Indebtedness.  Any actions taken by Lender pursuant to the terms of this paragraph shall not affect the obligation of Borrower or their successors or assigns to pay the sums secured by this Mortgage Agreement and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the Indebtedness, and shall not affect the lien or priority of lien hereof on the Property.  Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and reasonable attorney's fees as may be incurred at Lender's option for any such action if taken at Borrower's request.

12.     **FORBEARANCE BY LENDER NOT A WAIVER.**  Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy.  The acceptance by Lender of payment of any sum secured by this Mortgage Agreement after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment.  The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be

a waiver of Lender's right to accelerate the maturity of the Indebtedness. Lender's receipt of any awards, proceeds or damages hereunder shall not operate to cure or waive default by Borrower in payment of sums secured by this Mortgage Agreement.

13.   **MECHANIC'S LIEN LAW.**   Lender is authorized and empowered to do all things provided to be done by a mortgagee under Section 1311.14 of the Ohio Revised Code or the Kentucky Revised Code and any amendments, supplements or successor legislation thereto.

14.   **UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.**   In addition to being an Open-End Mortgage Agreement, this Mortgage Agreement is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Mortgage Agreement, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Mortgage Agreement or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agree to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Mortgage Agreement in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. Upon breach by Borrower of any covenant or agreement of Borrower contained in this Mortgage Agreement, including the covenants to pay when due all sums secured by this Mortgage Agreement, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided herein as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided herein.

15.   **LEASES OF THE PROPERTY.**   Borrower shall comply with and observe Borrower' obligations as landlord under all leases of the Property or any part thereof. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property. Unless otherwise directed by Lender, all new leases of the Property shall specifically provide that such leases are subordinate to this Mortgage Agreement; that the tenant attorn to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request, that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornment. Borrower shall not make, or suffer to be made, any lease of the Property or any part thereof, or any modification, extension or cancellation of any existing or future lease, without Lender's prior written consent. Borrower is not to accept any prepayment of rent for more than one month in advance without Lender's prior written consent.

16.   **ACCELERATION IN CASE OF BORROWER'S INSOLVENCY.**   If Borrower shall voluntarily file a petition under the Federal Bankruptcy Code, as such Code may from time to time be amended, or under any similar or successor Federal Statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or failure to pay debts as they come due, or if Borrower shall fail within thirty (30) days to obtain a dismissal of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if an order for relief under the Federal Bankruptcy Code shall be entered against the Borrower, or if a trustee, receiver or custodian shall be appointed for Borrower or Borrower's property, or if

Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets, then Lender may, at Lender's option, declare all of the sums secured by this Mortgage Agreement to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by paragraph 22 of this Mortgage Agreement. Any reasonable attorney's fees and other reasonable expenses incurred by Lender in connection with any of the above events shall be additional Indebtedness of Borrower secured by this Mortgage Agreement pursuant to paragraph 7 hereof.

17.   **TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN BORROWER.** Other than in the normal course of business of Borrower related to all or any portion of the Property for the sale of lots, construction of homes, and/or lease of lots or homes that are in accordance with the Release Prices and all applicable terms and conditions of the Loan Documents, upon sale, encumbrance, or transfer of all or any part of the Property, or any interest therein, without Lender's prior written consent, including (a) any sale, conveyance, assignment, or other transfer of (including installment land sale contracts), or the grant of a security interest in, all or any part of the legal or equitable title to the Property, except as otherwise permitted hereunder; (b) any lease of all or any portion of the Property, except as permitted hereunder; or (c) any sale, conveyance, assignment, or other transfer of, or the grant of a security interest in, any share of stock of the Borrower, if a corporation or any partnership interest in the Borrower, if a partnership, or any membership interest, if a limited liability entity, which transfer constitutes more than 25% of the outstanding ownership interests in the Borrower, Lender may at Lender's option, declare all of the sums secured by this Mortgage Agreement to be immediately due and payable, and Lender may invoke any remedies permitted by this Mortgage Agreement.

18.   **NOTICE.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage Agreement or in the Promissory Note shall be given by mailing such notice by certified mail, return receipt requested, addressed to Borrower at the address of Borrower as shown on Lender's records or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's principal place of business in Ohio or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage Agreement or in the Promissory Note shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

19.   **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17 hereof. All covenants and agreements of Borrower (if more than one) shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors as authorized by Lender. The captions and headings of the paragraphs of this Mortgage Agreement are for convenience only and are not to be used to interpret or define the provisions hereof.

20.   **GOVERNING LAW; SEVERABILITY.** This Mortgage Agreement shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Mortgage Agreement or the Promissory Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage Agreement or the Promissory Note which can be given effect without the conflicting provisions, and to this end the provisions of this Mortgage Agreement and the Promissory Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charge permitted to be collected from Borrower is interpreted so that any charge provided for in this Mortgage Agreement or in the Promissory Note, whether considered separately or together with other charges levied in connection with this Mortgage Agreement and the Promissory Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess



of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the Indebtedness. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with such indebtedness which constitute interest, shall be deemed to be uniformly allocated and spread over the stated term of the Promissory Note.

21.     **WAIVER OF MARSHALLING.** Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Mortgage Agreement, and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby, waive any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

22.     **ACCELERATION; REMEDIES.** Upon the occurrence of any of the following events (each an "Event of Default"): (i) Borrower's default in the payment of or performance of any of the covenants contained in the Promissory Note, (ii) Borrower's default of any of the covenants contained in the Loan Agreement, this Mortgage Agreement or any other Loan Document or (iii) the occurrence of a default or an event of default under any other Loan Document, then Lender, at Lender's option, may declare all of the sums secured by this Mortgage Agreement to be immediately due and payable without notice to the Borrower and may foreclose this Mortgage Agreement by judicial proceeding and may invoke any other remedies permitted by applicable law or as provided herein. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including, but not limited to costs of documentary evidence, abstracts and title reports, and reasonable attorney fees. Each remedy provided in this Mortgage Agreement is distinct and cumulative to all other rights or remedies under this Mortgage Agreement or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

23.     **ASSIGNMENT OF RENTS.** Upon an Event of Default, the Lender shall have the right without notice and without regard to the adequacy of any security for the Indebtedness hereby secured and with or without the appointment of a receiver, to enter upon and take possession of the Property, and Lender may operate, manage, rent and lease the Property and collect any rents, issues, income and profits therefrom, the same being hereby absolutely assigned and transferred to and for the benefit and protection of Lender. All rents collected by Lender may be applied to the cost of operation, maintenance and repair, and reasonable collection, management and attorney's fees, and then in reduction of any Indebtedness hereby secured in such other proportions as Lender may determine.

24.     **ENVIRONMENTAL COMPLIANCE.** Borrower shall, and Borrower shall cause all employees, agents, contractors and subcontractors of Borrower and any other persons present on or occupying the Property to, keep and maintain the Property, including the soil and ground water thereof, in compliance with, and not cause or permit the Property, including the soil and ground water thereof, to be in violation of any federal, state or local laws, ordinances or regulations relating to industrial hygiene or to the environmental conditions thereon (including but not limited to any "Hazardous Materials Laws," as hereinafter defined). Borrower shall not use, store, manufacture, or dispose of substances or related materials defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," or "toxic substances" under any Hazardous Materials Laws, and which will be present on, under or near the Property, in such form or quantity, as to have a material adverse impact upon the value of the Property (collectively referred to hereinafter as "Hazardous Materials").

Borrower shall immediately advise Lender in writing of: (i) any notices (whether such notices are received from the Environmental Protection Agency, the Occupational Safety and

Health Agency, the Department of Health Services, the State Water Quality Control Board, the Department of Sanitation, the Department of Public Works or any other federal, state or local governmental agency or regional office thereof) of violation or potential violation which are received by Borrower of any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Materials including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, the Hazardous Materials Transportation Act, the Resource Conservation and Recovery Act, and the Occupational Health and Safety Act (collectively, "Hazardous Materials Laws"); (ii) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any Hazardous Materials Laws; and (iii) all claims made or threatened by any third party against Borrower or the Property relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials (the matters set forth in clauses (i), (ii) and (iii) above are hereinafter referred to as "Hazardous Materials Claims").

Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims and to have its reasonable attorneys' and consultants' fees in connection therewith paid by Borrower upon demand.

Borrower shall indemnify and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against, any loss, damage, cost, expense, or liability directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, disposal, or presence (whether prior to or during the term of the loan secured by this Mortgage Agreement) of Hazardous Materials on, under or about the Property (whether by Borrower or a predecessor in title or any employees, agents, contractor or subcontractors of Borrower or any predecessor in title or any third persons at any time occupying or present on the Property), including, without limitation: (a) all consequential damages; (b) the costs of any required or necessary repair, cleanup or remediation of the Property, including the soil and ground water thereof, and the preparation and implementation of any closure, remedial or other required plans; (c) damage to any natural resources; and (d) all reasonable costs and expenses incurred by Lender in connection with clauses (a), (b) and (c), including but not limited to reasonable attorneys' and consultants' fees.

Any costs or expenses incurred by Lender for which Borrower is responsible or for which Borrower has indemnified Lender shall be paid to Lender on demand, and failing prompt reimbursement, shall be added to the Indebtedness secured by this Mortgage Agreement and earn interest at the default rate stated in the Promissory Note until paid in full.

25.    **CROSS DEFAULT.** If foreclosure proceedings are instituted against the Property upon any other lien or claim whether alleged to be superior or junior to the lien of this Mortgage Agreement, the Lender may, at its option, immediately upon institution of such suit or during the pendency thereof, declare this Mortgage Agreement and the Indebtedness secured hereby due and payable forthwith and may, at its option, proceed to foreclose this Mortgage Agreement.

26.    **ANTI-FORFEITURE.**    Borrower hereby further expressly represents and warrants to Lender that there has not been committed by Borrower or any other person involved with the Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Property or any part thereof or any monies paid in performance of its obligations under the Promissory Note or under any of the other Loan Documents, and Borrower hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture. In furtherance thereof, Borrower hereby indemnifies Lender and agrees to defend and hold Lender harmless from and against any loss, damage or injury by reason of the breach of the covenants and agreements or the warranties and representations set forth in the preceding sentence. Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against Borrower, Lender or all or any part of the Property under any federal or state law for which forfeiture of the Property or any part thereof or of any monies paid in performance of Borrower's obligations

under the Loan Documents is a potential result, then Lender may, at Lender's option, declare all the sums secured by this Mortgage Agreement to be immediately due and payable without prior notice to Borrower or opportunity to cure.

27.    **FUTURE ADVANCES.**  Borrower and Lender intend that, in addition to any other Indebtedness secured hereby, this Mortgage Agreement will secure unpaid balances of loan advances, whether obligatory or not, made by the Lender after this Mortgage Agreement has been delivered to the recorder for record up to a maximum amount of unpaid loan indebtedness outstanding at any time equal to $672,000.00 plus accrued and unpaid interest, advances (together with interest thereon) which Lender may make for the payment of taxes, assessments, insurance premiums and/or other costs incurred for the protection of the Property, advances for construction, alteration or renovation of the Property, or for any other purpose, together with all other sums due hereunder or secured hereby.

28.    **DEFEASANCE.**  If Borrower shall keep, observe and perform all of the covenants and conditions of this Mortgage Agreement on its part to be kept and performed and shall pay and perform, or cause to be paid and performed, all of the Indebtedness whether now outstanding or hereafter arising, including all extensions and renewals thereof, and all of the other Indebtedness, then Lender shall release this Mortgage Agreement upon the request and at the expense of Borrower, otherwise this Mortgage Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, Borrower has executed this Mortgage Agreement as of the date first set forth above.

**BORROWER:**

**BARESTONE, LLC.**
an Ohio limited-liability company

By: _____

STATE OF OHIO

COUNTY OF HAMILTON

The foregoing instrument was executed and acknowledged before me this 28th day of December, 2015 by DAVID (DJ) PATIL, JR., Authorized Representative of Barestone, LLC., an Ohio limited liability company, on behalf of the company, as his/its free and voluntary act and deed.

_____
Notary Public

Joseph Hater
Notary Public, State of Ohio
My Commission Expires 11-28-2017

Prepared by:
Union Savings Bank
8534 East Kemper Road
Cincinnati, Ohio 45249

12979   .00777

# LEGAL DESCRIPTION

## Parcel 81-4-22
### August 4, 2015

Situate in the City of Cincinnati, Hamilton County, Ohio, being part of Out Lot 43 of the
Hotchkiss Avery Carter Subdivision as recorded in Deed Book 39, Page 356 H.C.R.O. and being
more particularly described as follows:

Beginning at the intersection of the west line of Republic Street, 50' R/W and the north
line of 15TH Street, 50' R/W; thence with said Republic Street North 16°00'00" West, 328.30 feet
to a set cross notch; thence South 74°24'00" West, 74.30 feet to a set cross notch in the east line
of Goose Alley, 10' R/W; thence with said Goose Alley North 16°00'00" West, 18.00 feet to a
point being 0.1 feet north of an existing building corner; thence North 74°24'00" East, 74.30 feet
to an existing building corner in the west line of said Republic Street; thence with said Republic
Street South 16°00'00" East, 18.00 feet to the Place of Beginning. Containing 1337 square feet
of land more or less, (0.0307) . Bearings based on O.R. 12681, Page 1148 H.C.R.O.. Subject to
all legal highways, easements and restrictions of record. This description is based on a survey
performed under the direction of James D. Fago, Ohio Reg. No. 7902.

*Correct 81-4-22 Plat* (handwritten, left margin)

*Correct Plat 81-4-22 = 0.0307 At WS Republic St.* (handwritten, right margin)

*Correct Plat 81-4-22 to Read* (handwritten, right margin)

DESCRIPTION ACCEPTABLE
HAMILTON COUNTY ENGINEER

Tax Map - ___8/21/15___

CAGIS - ___8-25-15 RT___

12979    00778

# LEGAL DESCRIPTION

## Parcel 81-4-23
### August 4, 2015

Situate in the City of Cincinnati, Hamilton County, Ohio, being part of Out Lot 43 of the Hotchkiss Avery Carter Subdivision as recorded in Deed Book 39, Page 356 H.C.R.O. and being more particularly described as follows:

Beginning at the intersection of the west line of Republic Street, 50' R/W and the north line of 15th Street, 50' R/W; thence with said Republic Street North 16°00'00" West, 309.67 feet to a point being 0.6 feet south and 0.1 feet east of an existing building corner; thence South 74°24'00" West, 74.30 feet to a point in the east line of Goose Alley, 10' R/W being 0.3 feet north and 0.2 feet east of an existing building corner; thence with said Goose Alley North 16°00'00" West, 18.63 feet to a set cross notch; thence North 74°24'00" East, 74.30 feet to a set cross notch in the west line of said Republic Street; thence with said Republic Street South 16°00'00" East, 18.63 feet to the Place of Beginning. Containing 1385 square feet of land more or less, (0.0318) . Bearings based on O.R. 12681, Page 1148 H.C.R.O.. Subject to all legal highways, easements and restrictions of record. This description is based on a survey performed under the direction of James D. Fago, Ohio Reg. No. 7902.

DESCRIPTION ACCEPTABLE
HAMILTON COUNTY ENGINEER

Tax Map - _____ 8/21/15 ___

CAGIS - _____ 8-25-15 ___

*[handwritten margin notes: "Coriect Plat 81-4-23"; "Correct Plat 81-4-223 to Read"; "81-4-223 = 0.0318 Ac. WS Republic St."]*

C O U R T   O F   C O M M O N   P L E A S
Hamilton County, Ohio

CERTIFICATE OF JUDGMENT FOR LIEN UPON LANDS AND TENEMENTS
Revised Code Section 2329.02

I, AFTAB PUREVAL, Clerk of the Court of Common Pleas of Hamilton County, Ohio, do hereby
certify that on November 17th, 2017, a judgment or decree was rendered by the Court in
favor of UNION SAVINGS BANK, judgment creditor(s), against judgment debtor(s) BARESTONE
LLC, DAVID BAIR JR AKA DJ BAIR, SUZANNE BAIR, in the Amount of 290 THOUSAND 8 HUNDRED 47
DOLLARS & 33/100 ($290,847.33) with interest at the rate of 5.25% per centum per annum from
the 1st day of July, 2017 and Zero DOLLARS & 00/100 ($0.00) costs, in a certain action then
pending in said Court, Case Number A 1705978 on the docket thereof entitled UNION SAVINGS
BANK, Plaintiff(s) - vs - BARESTONE LLC, DAVID BAIR JR AKA DJ BAIR, SUZANNE BAIR,
Defendant(s), which judgment or decree is entered on case number CJ17022744 in said Court.


PLUS LATE CHARGES THAT CONTINUE TO ACCURE PER THE TERMS OF THE PROMISSORY NOTE, PLUS COSTS
ADVANCED, ATTORNEY FEES, COURT COSTS, AND COSTS INCURRED.

Filed November 20th, 2017 at  8:37 o'clock, A.M., in Volume/Page 17022744.

WITNESS my hand and the seal of said Court, this 20th day of November, 2017.

                                        AFTAB PUREVAL
                                        Clerk of Courts


                                        Deputy Clerk


( S E A L )                             A 1705978


The judgment or decree has been satisfied and the lien of the same canceled and released on

the _____ day of _____, 20_____.

                                   By_____
                                        Deputy Clerk


EXHIBIT
C


D120096219

CMSR5139

OTIRB Record Products

Preliminary Judicial Report
(04/15/2010)

## PRELIMINARY JUDICIAL REPORT

Issued by Chicago Title Insurance Company

Attn: Union Savings Bank
8534 E. Kemper Road
Cincinnati, OH 45249
(Guaranteed Party)

ORDER NO.  1711115661

Re: Barestone, LLC,
1533 Republic St.
Cincinnati, OH 45202

Pursuant to your request for a Preliminary Judicial Report (hereinafter "the Report") for use in judicial proceedings, CHICAGO TITLE INSURANCE COMPANY (hereinafter "the Company") hereby guarantees in an amount not to exceed $290,847.33 that it has examined the public records in Hamilton County, Ohio as to the land described in Schedule A, that the record title to the land is at the date hereof vested in Barestone, LLC, an Ohio limited liability company by instrument recorded in OR Book 12979, Page 775 and OR Book 12830, Page 1099 of the Hamilton County Records and free from all encumbrances, liens or defects of record, except as shown in Schedule B.

This is a guarantee of the record title only and is made for the use and benefit of the Guaranteed Party and the purchaser at judicial sale thereunder and is subject to the Exclusions from Coverage, the Exceptions contained in Schedule B and the Conditions and Stipulations contained herein.

This Report shall not be valid or binding until it has been signed by either an authorized agent or representative of the Company and Schedules A and B have been attached hereto.

Effective Date: November 2, 2017 at 07:59-AM

Issued By:        Prominent Title Agency, LLC

Signed By:

Authorized Signatory or Agent
Please Print Name

**EXHIBIT**

D

PJR
(04/15/2010)

(1711115661.PFD/1711115661/3)

E-FILED 12/12/2017 09:51 AM  /  CONFIRMATION 688734  /  A 1706829  /  COMMON PLEAS DIVISION  /  IFF

OTIRB Record Products

Preliminary Judicial Report
(04/15/2010)

## CHICAGO TITLE INSURANCE COMPANY

ORDER NO.  1711115661

PRELIMINARY JUDICIAL REPORT

SCHEDULE A

DESCRIPTION OF LAND

SITUATE IN THE CITY OF CINCINNATI, HAMILTON COUNTY, OHIO, BEING PART OF OUT LOT 43 OF THE
HOTCHKISS AVERY CARTER SUBDIVISION AS RECORDED IN DEED BOOK 39, PAGE 356 H.C.R.O. AND
BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE WEST LINE OF REPUBLIC STREET, 50' R/W AND THE
NORTH LINE OF 15TH STREET, 50' R/W; THENCE WITH SAID REPUBLIC STREET NORTH 16°00'00"
WEST, 328.30 FEET TO A SET CROSS NOTCH; THENCE SOUTH 74°24'00" WEST, 74.30 FEET TO A SET
CROSS NOTCH IN THE EAST LINE OF GOOSE ALLEY, 10' R/W; THENCE WITH SAID GOOSE ALLEY
NORTH 16°00'00" WEST, 18.00 FEET TO A POINT BEING 0.1 FEET NORTH OF AN EXISTING BUILDING
CORNER; THENCE NORTH 74°24'00" EAST, 74.30 FEET TO AN EXISTING BUILDING CORNER IN THE
WEST LINE OF SAID REPUBLIC STREET; THENCE WITH SAID REPUBLIC STREET SOUTH 16°00'00" EAST,
18.00 FEET TO THE PLACE OF BEGINNING. CONTAINING 1337 SQUARE FEET OF LAND MORE OR LESS,
(0.0307). BEARINGS BASED ON O.R. 12681, PAGE 1148 H.C.R.O.. SUBJECT TO ALL LEGAL HIGHWAYS,
EASEMENTS AND RESTRICTIONS OF RECORD. THIS DESCRIPTION IS BASED ON A SURVEY
PERFORMED UNDER THE DIRECTION OF JAMES D. FAGO, OHIO REG. NO. 7902.

Parcel ID: 081-0004-0022-00

More Commonly Known As: 1533 Republic St., Cincinnati, OH 45202

SCHEDULE B

The matters shown below are exceptions to this Preliminary Judicial Report and the Company assumes no
liability arising therefrom.

1.   Parcel ID: 081-0004-0022-00, Taxes for the first half of 2016 are Paid in the amount of $319.47. Taxes
     for the second half of 2016 are Unpaid and now due and payable in the amount of $319.47.

     Annual #34-999 Urban Forestry City Assessment in the Amount of $7.74 is Paid.

2.   Subject to easements and restrictions of record

3.   Any state of facts as would be disclosed by an accurate survey and inspection of the premises.

4.   Rights of parties in possession.

5. Open-End Mortgage executed by Barestone, LLC, an Ohio Limited Liability Company to Union Savings Bank, an Ohio Corporation, dated 12/28/2015 and recorded on 01/04/2016 in Book 13074, Page 00050, securing the principal sum of $672,000.00.

   Partial Release of Mortgage recorded on 08/25/2017, in Book 13489, Page 01417, Hamilton County, Ohio Records.

6. Notice of Commencement in favor of Bair Build Co., against Barestone, LLC, filed for record 03/18/2016, in Book 13126, Page 02034, Hamilton County, Ohio Records.

7. Affidavit for Mechanics Lien in favor of SpeedCo Construction LLC dba SpeedCo Roofing and Metal Work against Barestone, LLC, in the amount of $14,380.00, Plus costs and interests, filed for record 03/23/2017, in Book 13380, Page 01861, Hamilton County, Ohio Records.

8. Affidavit for Mechanics Lien in favor of Steel It LLC against Barestone, LLC, in the amount of $21,000.00, Plus costs and interests, filed for record 04/21/2017, in Book 13401, Page 01365, Hamilton County, Ohio Records.

E-FILED 12/12/2017 09:51 AM / CONFIRMATION 682731 / A 1706729 / COMMON PLEAS DIVISION / IFF

OTIRB Record Products

## CONDITIONS AND STIPULATIONS
## OF THIS PRELIMINARY JUDICIAL REPORT

1. Definition of Terms

   "Guaranteed Party": The party or parties named herein or the purchaser at judicial sale.

   "Guaranteed Claimant": Guaranteed Party claiming loss or damage hereunder.

   "Land": The land described specifically or by reference in Schedule A, and improvements affixed thereto, which by law constitute real property; provided however the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, lanes, ways or waterways.

   "Public Records": Those records under state statute and, if a United States District Court resides in the county in which the Land is situated, the records of the clerk of the United States District Court, which impart constructive notice of matters relating to real property to purchasers for value without knowledge and which are required to be maintained in certain public offices in the county in which the land is situated.

2. Determination of Liability

   This Report together with any Final Judicial Report or any Supplement or Endorsement thereof, issued by the Company is the entire contract between the Guaranteed Party and the Company.

   Any claim of monetary loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest guaranteed hereby or any action asserting such claim, shall be restricted to this Report.

3. Liability of Company

   This Report is a guarantee of the record title of the Land only, as disclosed by an examination of the Public Records herein defined.

4. Notice of Claim to be given to Guaranteed Claimant

   In case knowledge shall come to the Guaranteed Party of any lien, encumbrance, defect, or other claim of title guaranteed against and not excepted in this Report, whether in a legal proceeding or otherwise, the Guaranteed Party shall notify the Company within a reasonable time in writing and secure to the Company the right to oppose such proceeding or claim, or to remove said lien, encumbrance or defect at its own cost. Any action for the payment of any loss under this Report must be commenced within one year after the Guaranteed Party receives actual notice that they may be required to pay money or other compensation for a matter covered by this Report or actual notice someone claims an interest in the Land covered by this Report.

5. Extent of Liability

   The liability of the Company shall in no case exceed in all the amount stated herein and shall in all cases be limited to the actual loss, including but not limited to attorneys fees and costs of defense, only of the Guaranteed Party. Any and all payments under this Report shall reduce the amount of this Report **PRO TANTO** and the Company's liability shall terminate when the total amount of the Report has been paid.

6. Options to Pay or Otherwise Settle Claims: Termination of Liability

   The Company in its sole discretion shall have the following options:

(1711115661.PFD/1711115661/3)

a.    To pay or tender to the Guaranteed Claimant the amount of the Report or the balance remaining thereof, less any attorneys fees, costs or expenses paid by the Company to the date of tender. If this option is exercised, all liability of the Company under this Report terminates including but not limited to any liability for attorneys fees, or any costs of defense or prosecution of any litigation.

b.    To pay or otherwise settle with other parties for or in the name of the Guaranteed Claimant any claims guaranteed by this Report.

c.    To continue, re-open or initiate any judicial proceeding in order to adjudicate any claim covered by this Report. The Company shall have the right to select counsel of its choice (subject to the right of the Guaranteed Claimant to object for reasonable cause) to represent the Guaranteed Claimant and will not pay the fees of any other counsel.

d.    To pay or tender to the Guaranteed Claimant the difference between the value of the estate or interest as guaranteed and the value of the estate or interest subject to the defect, lien or encumbrance guaranteed against by this Report.

7.    <u>Notices</u>

All notices required to be given to the Company shall be given promptly and any statements in writing required to be furnished to the Company shall be addressed to Claims Department, P.O. Box 45023, Jacksonville, FL 32232-5023.

E FILED 10/13/2017 09:51 AM / CONFIRMATION 683734 / A 1706789 / COMMON PLEAS DIVISION / IFF

OTIRB Record Products

Preliminary Judicial Report
(04/15/2010)

## EXCLUSIONS FROM COVERAGE

1.   The Company assumes no liability under this Report for any loss, cost or damage resulting from any physical condition of the Land.

2.   The Company assumes no liability under this Report for any loss, cost or damage resulting from any typographical, clerical or other errors in the Public Records.

3.   The Company assumes no liability under the Report for matters affecting title subsequent to the date of this Report or the Final Judicial Report or any supplement thereto.

4.   The Company assumes no liability under this Report for the proper form or execution of any pleadings or other documents to be filed in any judicial proceedings.

5.   The Company assumes no liability under this Report for any loss, cost, or damage resulting from the failure to complete service on any parties shown in Schedule B of the Preliminary Judicial Report and the Final Judicial Report or any Supplemental Report issued thereto.