**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

Beth A. Buchanan
United States Bankruptcy Judge

**Dated: December 31, 2020**

<br>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| **SUZANNE BAIR** | ) | **Case No. 18-12585** |
| | ) | **Chapter 7** |
| **Debtor** | ) | **Judge Buchanan** |
| | ) | |
| | ) | |
| | ) | |
| **BARESTONE, LLC, ET AL.** | ) | **Adv. No. 18-1062** |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SUZANNE BAIR** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |
| | ) | |

**DECISION DENYING DEBTOR'S AMENDED MOTION FOR JUDGMENT ON
THE PLEADINGS [Docket Number 50]**

[This opinion is not intended for publication.]

This matter is before this Court on *Debtor's Amended Motion for Judgment on the Pleadings* [Docket Number 50]; *Plaintiffs' Memorandum in Opposition to Defendant's Amended Motion for Judgment on the Pleadings* [Docket Number 52]; and the *Debtor's Reply to Plaintiffs' Memorandum in Opposition to Motion for Judgment on the Pleadings* [Docket Number 53].[1]

For the reasons set forth in this decision, including the introduction of extraneous facts and evidentiary materials intended to dispute the facts and claims set forth in the Plaintiffs' Complaint, Debtor-Defendant Suzanne Bair's *Amended Motion for Judgment on the Pleadings* is denied.

## I.    <u>JURISDICTION</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District.

## II.    <u>BACKGROUND</u>

### A.    **Amended Complaint's Factual Allegations**

On May 7, 2020, Plaintiffs Barestone, LLC ("<u>Barestone</u>") and Kingston Development Group, LLC ("<u>Kingston</u>") filed their *First Amended Complaint to Determine Dischargeability of a Debt Pursuant to 11 U.S.C. Sec. 523* [Docket Number 42] ("<u>Complaint</u>"). In the Complaint, Plaintiffs Kingston and Barestone (collectively "<u>Plaintiffs</u>") described a somewhat complicated business venture between Kingston and a business titled Bair Build Company, LLC ("<u>Bair Build</u>"). Bair Build is an Ohio LLC in which Debtor-Defendant Suzanne Bair ("<u>Debtor</u>") is the sole 100% member [*Id.*, ¶ 5].

---

[1] As set forth later in this decision, this Court further reviewed, but excluded consideration of, the *Notice of Filing Declaration of Debtor Suzanne Bair* [Docket Number 54].

According to the Complaint, Bair Build and Kingston jointly organized Barestone for the purpose of acquiring and developing the real property at 1531-1533 Republic Street in Hamilton County, Ohio (the "Republic Street Property") [*Id.*, ¶ 8]. The plan was to subdivide the two properties, sell the parcels to third parties, and renovate the buildings to the buyers' specifications [*Id.*].

Kingston made an initial capital contribution of $132,000 to Barestone and owns 60% of Barestone [*Id.*, ¶¶ 9-10]. Bair Build made an initial capital contribution of $88,000 and owns 40% of Barestone [*Id.*]. Pursuant to Barestone's Operating Agreement attached to the Complaint, Bair Build was designated as its managing member with sole responsibility for the day to day management of Barestone and the building renovations [*Id.*, ¶ 10 and Ex. A].

Barestone purchased the Republic Street Property in February of 2015 for $103,000, subdivided it into two parcels (one for the building located at 1531 Republic Street and one for the building located at 1533 Republic Street), procured buyers for both parcels, and then mortgaged the property to Union Savings Bank on December 28, 2015, as security for a construction loan in the amount of $672,000, the proceeds of which Barestone required to complete the renovations [*Id.*, ¶ 11].

The Plaintiffs alleges that in June and July of 2015, Bair Build entered contracts to sell 1531 and 1533 Republic Street to other purchasers. Specifically, Bair Build entered into a contract with Chris Heinold and Kathleen Finn for their purchase of 1531 Republic Street for $535,000 [*Id.*, ¶ 12]. They paid a ten percent (10%) security deposit in the amount of $53,500 to the order of Bair Build [*Id.*]. Similarly, in July of 2015, Bair Build entered into a contract with Ravdeep Chanana and Sonia Guleria for their purchase of 1533

Republic Street for $550,000 [*Id.*, ¶ 13]. They paid a ten percent (10%) security deposit in the amount of $55,000 to the order of Bair Build [*Id.*]. The Plaintiffs assert that Bair Build did not have authority to sell the properties nor did it put the security deposits into Barestone's account, even after demanded by Kingston [*Id.*, ¶¶ 12-14].

Bair Build commenced renovation beginning in January of 2016 [*Id.*, ¶ 16]. Both purchase contracts required completion of all renovations within eighteen months after execution (December 30, 2016 for the property at 1531 Republic Street and January 16, 2017 for the property at 1533 Republic Street) [*Id.*].

As renovations began, Bair Build fell behind and experienced setbacks [*Id.*, ¶ 19]. The Complaint's allegations of Bair Build's problematic activities and responses to those setbacks include the following:

a) Bair Build failed to meet construction deadlines and the costs of the renovations exceed budget by $225,000 [*Id.*, ¶ 19];

b) Bair Build provided periodic financial statements and electronic mail communication to Plaintiffs that asserted renovations remained on schedule and on budget when, in fact, they were not [*Id.*, ¶ 17];

c) Bair Build misrepresented the status of progress to Union Savings Bank, the bank that provided a construction loan totaling approximately $660,000 [*Id.*, ¶ 15], in order to cause the bank to release additional funds [*Id.*, ¶ 18];

d) Bair Build became delinquent on construction loan payments to Union Savings Bank ultimately resulting in default, civil judgment and foreclosure of the 1533 Republic Street Property [*Id.*, ¶ 19];

e) Bair Build charged Barestone for multiple change orders even though Bair Build also received payment directly from the purchasers which it concealed [*Id.*];

f) Bair Build concealed numerous failed inspections resulting from construction deficiencies that would delay timely completion [*Id.*];

g) Bair Build failed to pay several subcontractors resulting in four mechanic's liens filed against the property, all of which Barestone ultimately had to satisfy prior to the closing of the 1531 Republic Street Property [*Id.*]; and

h) Bair Build could not account for at least $80,000 missing from the construction loan proceeds and security deposits [*Id.*].

On December 1, 2016, with the approaching deadline to complete renovations, the Plaintiffs expressed concern to Bair Build which provided Plaintiffs written assurances that construction would be substantially completed by December 31, 2016 and further that Bair Build would provide regular emails to Plaintiffs [*Id.*, ¶ 21]. Bair Build also agreed to assume the construction loan payments if renovations were not substantially completed by this date and to pay Kingston the full amount of its initial capital contribution and an additional 40% of the remaining net closing proceeds before any disbursements to Barestone [*Id.*, ¶ 22].

However, when it became clear to Kingston in late December of 2016 that Barestone would be unable to timely close the sales, and that Bair Build misrepresented material facts, Kingston removed Bair Build as the managing member of Barestone [*Id.*, ¶ 23]. Kingston appointed itself as managing member [*Id.*].

Kingston expended additional funds to complete the renovations at 1531 Republic Street and closed the sale on July 3, 2017 [*Id.*, ¶ 24]. Prior to closing, Bair Build executed and delivered to Plaintiffs an affidavit in which Bair Build represented that all subcontractors who provided labor or materials to 1531 Republic Street had been paid in full [*Id.*]. After closing, however, Plaintiffs discovered at least one subcontractor had not been paid in full [*Id.*].

In the end, 1533 Republic Street was sold by sheriff sale in the foreclosure action resulting in Barestone losing all the profit expected under the contract [*Id.*, ¶ 26]. At the closing of the other property, 1531 Republic Street, Bair Build refused to deliver the

security deposit, so the sale proceeds paid to Barestone were reduced by $53,500 [*Id.*, ¶ 25].

Additionally, the Complaint includes allegations that the Debtor issued and signed a check drawn upon Barestone's bank account on or about February 19, 2016, less than two months after renovations commenced, in the amount of $39,272.15 payable to "cash" [*Id.*, ¶ 20]. Plaintiffs allege that the Debtor is not, and has never been, a signatory on Barestone's checking account [*Id.*]. The Plaintiffs assert that the Debtor lacked legal authority, actual or implied, to withdraw funds from Barestone's checking account for cash or for any other purpose and are not aware of any legitimate business purpose for the check [*Id.*].

Based on a separate complaint against the Debtor filed by the United States Trustee, the Plaintiffs also believe that in the year preceding the Debtor's bankruptcy filing, she transferred significant personal assets and Bair Build assets into cash to frustrate her creditors [*Id.*, ¶ 27]. The Plaintiffs believe that she and Bair Build also transferred funds converted from Barestone [*Id.*].

To the extent that the Debtor attributes any of these allegations to her son, David (DJ) Bair, the Plaintiffs assert that Mr. Bair acted at all times in concert with the Debtor, at her direction, or as her agent or de facto partner [*Id.*, ¶ 29]. Further, the Plaintiffs allege that the Debtor had such complete control over Bair Build that it had no separate will or existence of its own and that she consistently commingled personal and company funds [*Id.*, ¶ 30].

B.    **Amended Complaint's Causes of Action**

The Complaint is divided into sections labeled "The Forged Check," "The Security Deposits," "Other Misappropriation," "Actual Fraud and Breach of Fiduciary Duty," and "Punitive Damages and Attorneys' Fees" [*Id.*, ¶¶ 31-61]. The only statutory provisions mentioned in these sections are provisions to hold a debt nondischargeable under the Bankruptcy Code[2] [*Id.*] and one Ohio statutory provision (Ohio Revised Code § 1705.29) under which the Plaintiffs allege that Bair Build owes Barestone a fiduciary duty [*Id.*, ¶ 54]. However, it appears to this Court that each labeled section is intended to include both state law causes of action and actions under the Bankruptcy Code to except a debt from discharge. As such, this Court concludes that the following are the causes of action that the Plaintiffs intended to include in the Complaint:

a)  "The Forged Check": Debtor's conversion of a $39,272.15 check that she drew on the Barestone account on February 19, 2016, which the Plaintiffs assert is a debt that should be held nondischargeable as "larceny" pursuant to 11 U.S.C. § 523(a)(4) and/or a "willful and malicious injury" pursuant to 11 U.S.C. § 523(a)(6) [*Id.*, ¶¶ 31-37];

b)  "The Security Deposits": Bair Build's conversion of two security deposits intended for Barestone totaling $108,500 to be held nondischargeable as "larceny" under § 523(a)(4) and/or a "willful and malicious injury" pursuant to § 523(a)(6) [*Id.*, ¶¶ 38-41]. Plaintiffs claim that the Debtor is personally liable "for all claims and allegations set forth herein, including the intentional torts of Bair Build" [*Id.*, ¶ 40];

c)  "Other Misappropriation": Bair Build's knowing and intentional conversion or misappropriation of funds from construction loan proceeds totaling approximately $147,772, which the Plaintiffs claim should be determined nondischargeable as "larceny" pursuant to § 523(a)(4) and/or a "willful and malicious injury" pursuant to § 523(a)(6). [*Id.*, ¶¶ 42-45]. Again, Plaintiffs claim that the Debtor is personally liable "for all claims and allegations set forth herein, including the intentional torts of Bair Build" [*Id.*, ¶ 44];

_____

[2] References to the "Bankruptcy Code" are to Title 11 of the United States Code.

d) "<u>Actual Fraud and Breach of Fiduciary Duty</u>": Bair Build's repeated fraudulent misrepresentations to Plaintiffs and Union Savings Bank about the status of renovations and remaining on budget and concealing the failure to pay subcontractors, which breached their fiduciary duty and caused loss in the amount of $147,772 and which Plaintiffs claim is a debt that should be excepted from discharge as "false representation and actual fraud" pursuant to § 523(a)(2)(A) and "fraud while acting in a fiduciary capacity pursuant to" § 523(a)(4) and (a)(6) [*Id*., ¶¶ 46-59]. Again, Plaintiffs claim that the Debtor is personally liable "for all claims and allegations set forth herein, including the intentional torts of Bair Build" [*Id*., ¶ 58];

e) "<u>Punitive Damages and Attorneys' Fees</u>": Debtor's attempts to hinder and delay collection of debts, conversion and concealment of funds and transfers from Plaintiffs and failure to maintain business records which shows an "intentional, willful, and egregious pattern of misconduct" and for which the Plaintiffs assert entitlement to punitive damages and attorney fees [*Id*., ¶¶ 60-61].

Based on these causes of action, the Plaintiffs request not less than $200,000 in compensatory damages, $100,000 in punitive damages, attorney fees and that these amounts be excepted from the Debtor's discharge pursuant to Bankruptcy Code § 523(a) in addition to any other legal or equitable relief to which Plaintiffs may be entitled.

**C.    Debtor's Motion for Judgment on the Pleadings and Responsive Documents**

Following the filing of her answer [Docket Number 45], the Debtor filed an original and then Amended Motion for Judgment on the Pleadings [Docket Number 50] ("<u>Motion</u>"). In the Motion, the Debtor argues that most of the allegations in the Complaint are levied at Bair Build, a separate entity from the Debtor. The Debtor is not the manager of Bair Build, or an owner or manager of Barestone, or direct business partner of Kingston. Furthermore, the Debtor asserts that the Complaint fails to demonstrate any contractual or fiduciary relationship between the Debtor and the Plaintiffs. The Debtor asserts that the roles and obligations of individual entities were spelled out in the Operating Agreement attached to

the Complaint and that the Operating Agreement specifically set forth the limits on liability

of any member of Barestone.

Next, the Debtor argues that the statute of limitations has passed on any claim for

civil theft under Ohio law and that the Plaintiffs' conversion claim fails because the funds

allegedly converted are not identifiable.

Finally, the lengthy Motion sets forth various substantive arguments that rely on

facts not included in the Complaint or in direct conflict with those facts. The facts asserted

in support of the Debtor's arguments that do not have a foundation in the Complaint include

the following:

a) The Debtor had full authority to write and sign the $39, 272.15 check drawn
   on the Bair Build account;

b) The $39,272.15 check was not converted by the Debtor for her own benefit
   but was, instead, deposited into a Barestone account to pay contractors;

c) Any funds kept by Bair Build and/or the Debtor from the security deposits
   was a "construction management fee" that they were entitled to keep and/or
   the funds were used to preform renovation work;

d) Plaintiffs are not creditors of the Debtor;

e) Any damages arose after Bair Build was removed as managing member and
   while Kingston was managing member;

f) Any extra funds Kingston paid to complete renovations were voluntary
   and/or treated as "capital calls" compensated by Kingston receiving a larger
   percentage ownership of Barestone;

g) Kingston knew that Barestone was an underfunded risky project and that
   the construction was not likely to finish on schedule; and

h) Any representations made by Bair Build to Union Savings Bank were based
   on future projections rather than current facts regarding the status of
   renovations and the budget.

[Docket Number 50].

The Plaintiffs filed a response to the Motion and the Debtor filed a reply [Docket Numbers 52 and 53].

Subsequent to the filing of these responsive documents, the Debtor filed a "*Notice of Filing of Declaration of Debtor Suzanne Bair*" [Docket Number 54] ("Notice"). In the Notice, the Debtor alleges that an attached IRS form proves that Kingston was not damaged because it elected to be made whole by transferring Bair Build's 40% membership interest in Barestone to itself. Following the filing of the Debtor's Notice, the Plaintiffs filed a Motion to Strike [Docket Number 55] to which the Debtor responded [Docket Number 56]. The Motion to Strike and responsive document will be dealt with by separate order. In all other respects, this matter is ripe for decision.

## III.   LEGAL ANALSYIS

### A.   Standard for Judgment on the Pleadings

The Debtor requests judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c), incorporated in bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7012. The Motion is reviewed under the standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001); *Michael v. Javitch, Block & Rathbone, LLP,* 825 F.Supp.2d 913, 918 (N.D. Ohio 2011). As such, this Court is to construe the Complaint in a light most favorable to the Plaintiffs accepting all of its well pleaded factual allegations as true to determine whether the Plaintiffs state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ziegler,* 249 F.3d at 512.

In addressing a Rule 12(b)(6) motion, courts assess the sufficiency of a complaint in light of the pleading requirements in Rule 8. Under Rule 8(a)(2), made applicable in

bankruptcy adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7008, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Nevertheless, detailed factual allegations are not necessary. *Twombly*, 550 U.S. at 555. "Plausibility" exists so long as "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Because a motion to dismiss or motion for judgment on the pleadings assesses the facial sufficiency of a complaint, materials outside the pleadings are ordinarily not considered. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). Limited exceptions include: "'exhibits attached [to the complaint], public records, items appearing in the record of the

case and exhibits attached to defendant's motion to dismiss so long as they are referred to

in the complaint and are central to the claims contained therein[.]'" *Rondigo*, 641 F.3d at

681 (citations omitted); *see also Barany-Snyder*, 539 F.3d at 332. Outside of these limited

circumstances, if extraneous materials are presented to the court, the materials must be

excluded or the motion must be treated as one for summary judgment and the parties must

be provided additional notice and an opportunity to present all materials pertinent to the

motion. Fed. R. Civ. P. 12(d); *Rondigo*, 641 F.3d at 680-81.

**B.     Complaint's Non-Bankruptcy Causes of Action**

        The Debtor filed a lengthy Motion with many factual and legal arguments that will

be addressed in due course. However, this Court begins by stressing its difficulty teasing

out legal issues raised in the Motion and responsive documents and whether those issues

were related to causes of action intended to except a debt from discharge under provisions

of Bankruptcy Code § 523(a) or, instead, causes of action under state law intended to

determine the Debtor's liability and the amount of debt owed to Plaintiffs. At least in part,[3]

these difficulties may be attributed to the failure of the Plaintiffs' Complaint to separate

state law causes of action to hold the Debtor liable for a debt from those causes of action

under the Bankruptcy Code to except that same debt from discharge.

        This Court has done its best to determine the state law causes of action the Plaintiffs

raise in the Complaint as stated in Part II (B.) of this decision. However, to the extent those

non-bankruptcy causes of action were not intended or a mere afterthought[4] on the part of

---

[3] Another difficulty met by this Court is the lengthy nature of the Debtor's Motion that included a twenty-page "Facts" section going well beyond the facts contained in the Plaintiffs' thirteen-page Complaint. As this Court discusses within this decision, newly raised facts and facts intended to dispute the allegations of a complaint are inappropriate for consideration at this stage of the litigation.

[4] One reason to believe that the Plaintiffs are not focused on state law causes of action in the Complaint is their insistence that "state statutes of limitation are irrelevant to an adversary proceeding brought pursuant to

the Plaintiffs, this Court reminds the Plaintiffs that, without a prior state court judgment determining the Debtor's liability to the Plaintiffs and the amount of damages, those issues will need to be determined prior to, or along with, the dischargeability of the debt under Bankruptcy Code § 523(a). *See Federal Ins. Co. v. Courtney (In re Courtney)*, Adversary Number 16-1029, Docket Number 17, p. 4, n.1 (Bankr. S.D. Ohio 2017) ("[I]f the Plaintiff does not establish an underlying debt owed to it by the Debtor under non-bankruptcy law, there can be no determination of dischargeability."); *Lawson v. Conley (In re Conley)*, 482 B.R. 191, 207 (Bankr. S.D. Ohio 2012) ("[T]o establish the nondischargeability of a debt, the creditor must first show the existence of a debt under state law."); *Weidle Corp. v. Leist (In re Leist)*, 398 B.R. 595, 601 (Bankr. S.D. Ohio 2008) ("As elementary as it may seem, a creditor must establish that he is owed a debt before it can be determined that the debt is nondischargeable under any § 523(a) exception to discharge.").

## C.    Acts for Which the Debtor Could be Liable

Moving on to the arguments raised in the Motion, this Court begins with the Debtor's contention that much of the alleged misconduct set forth in the Complaint is that of Bair Build, rather than the Debtor. Because the Debtor was not the manager of Bair Build nor did the Debtor have a direct contractual relationship with the Plaintiffs, the

---

11 U.S.C. Sec. 523(a)." [Docket Number 52, p. 8]. While not relevant to Bankruptcy Code § 523(a) causes of action, state statutes of limitation are relevant to the causes of action necessary to determine the existence and amount of the Debtor's debt to Plaintiffs which, as this Court notes, must be determined prior to or along with any determination of dischargeability of the debt under Bankruptcy Code § 523(a).

Debtor argues that she cannot be held liable for Bair Build's acts and those claims should be dismissed.[5]

In response, the Plaintiffs assert that the Debtor as a member of Bair Build, an Ohio limited liability company ("LLC"), may be liable for her own acts or omissions by personally participating in the alleged misconduct. Furthermore, the Plaintiffs note that the Complaint includes allegations that the Debtor, as the sole member and mother of the manager of Bair Build, directly controlled Bair Build.

Under Ohio law, one of the benefits of forming an LLC is that its debts, obligations and liabilities, whether arising in contract, tort, or otherwise, are solely the debts, obligations and liabilities of the LLC for which members, managers and officers are generally not personally liable. Ohio Rev. Code § 1705.48(A) and (B); *Custom Assocs., L.P. v. VSM Logistics, LLC*, 154 N.E.3d 178, 183 (Ohio Ct. App. 2020). Nonetheless, there are exceptions. "[I]n some instances, claims can be maintained against members, managers or officers of an LLC arising from their own wrongful actions or omissions and can be pursued through claims for tortious conduct." *Custom Assocs., L.P.*, 154 N.E.3d at 183 (citing Ohio Rev. Code § 1705.48(D)); *see also State ex rel. Cordray v. Evergreen Land Dev., Ltd.*, 2016 Ohio App. LEXIS 3898, at *15-17, 2016 WL 5408651, at *4 (Ohio Ct.

---

[5] The Debtor further argues that the Barestone Operating Agreement limits the Debtor's liability to the Plaintiffs in Section 5.9 which states:

Unless the Members otherwise agree, no Member shall be liable for the liabilities of the Company [defined as "Barestone LLC" in the Glossary attached to the Operating Agreement]. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under this Agreement or the Act shall not be grounds for imposing personal liability on the Members for liabilities of the Company.

[Docket Number 42, Ex. A, Sec. 5.9]. However, the Complaint does not assert that Debtor was a member of Barestone nor does the Complaint include a clear cause of action to hold the Debtor personally liable for the debts or obligations of Barestone (as opposed to Bair Build). Accordingly, the relevance of this provision of the Barestone Operating Agreement remains unclear and, at this stage, does not form a basis for judgment on the pleadings.

App. Sept. 27, 2016) (noting that while an officer is not liable due merely to his status as a corporate officer, that corporate officer may still be held liable when he or she personally engaged in the transgressions). For example, an officer or agent who engages in fraud within the scope of his or her employment may be held liable for that fraud even though the corporation or LLC may also be liable. *Yo-Can, Inc. v. Yogurt Exchange, Inc.,* 778 N.E.2d 80, 90 (Ohio Ct. App. Sept. 26, 2002) (noting that piercing the corporate veil is not required when an officer or agent personally participates in the fraud or wrongdoing).

In addition, a member of an LLC may be held liable for the LLC's misdeeds if the entity is so dominated by the member that it has no separate mind, will or existence of its own, control is exercised in such a manner as to commit fraud or an illegal act, and injury or unjust loss results from the member's control. *Belvedere Condo. Unit Owners' Assoc. v. R.E. Roark Co., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993). This theory for holding a member liable is called piercing the corporate veil.[6] *Id.* However, piercing the corporate veil is a "rare exception" reserved for members or shareholders who exercise control over a corporation or LLC in such a manner as to commit "fraud, an illegal act, or similarly unlawful act." *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 544-45 (Ohio 2008).

In the case at hand, the Plaintiffs' Complaint includes allegations that the Debtor, herself, engaged in acts of conversion [Docket Number 42, ¶¶ 31-37 and ¶¶ 60-61]. Furthermore, although the Plaintiffs' other causes of action ("The Security Deposits," "Other Misappropriation," and "Actual Fraud and Breach of Fiduciary Duty") pin

---

[6] Although labeled "piercing the *corporate* veil," the same test is applied to Ohio LLCs to hold their members or managers liable. *Denny v. Breawick, LLC*, 137 N.E.3d 578, 584 (Ohio Ct. App. 2019); *Huttenbauer Land Co., LLC v. Harley Riley, Ltd.*, 2012 Ohio App. LEXIS 4073, at *15, 2012 WL 4760871, at *3 (Ohio Ct. App. Oct. 5, 2012).

misconduct on Bair Build rather than directly on the Debtor, the Plaintiffs have set forth

facts which could support piercing the corporate veil. First, the Plaintiffs assert that the

Debtor, as sole member of Bair Build and the mother of Bair Build's manager, "holds

complete control over Bair Build [such] that the company has no separate mind, will, or

existence of its own[.]" [Docket Number 42, ¶ 30]. In addition, the Complaint includes

allegations that Bair Build committed acts that may support piercing the corporate veil

[Docket Number 42, ¶¶ 38-59]. *Dombroski*, 895 N.E.2d at 544-45; *Denny v. Breawick*,

*LLC*, 137 N.E.3d 578, 586 (Ohio Ct. App. 2019). These allegations, together, are sufficient

to provide the Debtor with fair notice that the Plaintiffs intend to proceed under this

doctrine. *RCO Int'l Corp. v. Clevenger*, 904 N.E.2d 941, 943-44 (Ohio Ct. App. 2008)

(setting forth minimal requirements for a complaint to give a defendant fair notice that the

plaintiff intends to proceed under the doctrine of piercing the corporate veil). Accordingly,

this Court denies the Debtor's request for judgment on the pleadings in this respect.

**D.      Civil Theft Claim**

Next, the Debtor asserts that the Complaint includes a claim for civil theft under

Ohio Revised Code § 2307.60 but that the one-year statute of limitations, as set forth in

Ohio Revised Code § 2305.11,[7] has expired. In response, the Plaintiffs assert that they do

not bring a claim for civil theft, but instead, claims for conversion and fraud. They argue

---

[7] In her Motion, the Debtor cites Ohio Revised Code § 2305.1 as the provision she claims provides the statute
of limitations applicable to a civil theft claim. This Ohio Revised Code reference appears to be a typographic
error. Based on language in a footnote in the Motion, it appears that the Debtor refers to the one-year statute
of limitations found in Ohio Revised Code § 2305.11 for an action based "upon a statute for a penalty or
forfeiture." However, pinpointing the full statutory citation is unnecessary because this Court agrees with the
Plaintiffs that the Complaint does not include a claim based on civil theft.

that their conversion and fraud claims have a four or possibly five-year statute of limitations pursuant to Ohio Revised Code § 2305.09(B) and (C).[8]

Again, this Court emphasizes that the Complaint could have been drafted more clearly to delineate the causes of action brought pursuant to state law and separate them from the causes of action brought pursuant to the Bankruptcy Code. Nonetheless, upon careful review of the Complaint, this Court agrees with the Plaintiffs that it does not state a claim for civil theft pursuant to Ohio Revised Code § 2307.60, but, instead, claims for conversion and fraud under Ohio law. Accordingly, the statute of limitations raised by the Debtor is inapplicable and the Debtor's Motion is denied in this respect.[9]

## E.      Conversion

Next, the Debtor maintains that she is entitled to judgment on the pleadings with respect to the Plaintiffs' claim for conversion under Ohio law. Typically, a claim for conversion requires proof of: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or

---

[8] Ohio Revised Code § 2305.09 provides, in pertinent part:

> Except as provided for in division (C) of this section, an action for any of the following causes shall be brought within four years after the cause thereof accrued:
>
> ***
>
> (B) For the recovery of personal property, or for taking or detaining it;
>
> (C) For relief on the ground of fraud, except when the cause of action is a violation of section 2913.49 of the Revised Code, in which case the action shall be brought within five years after the cause thereof accrued[.]

[9] In her Motion and reply, the Debtor pivots from arguing that the Plaintiffs missed a one-year statute of limitations for bringing a civil theft claim to arguing that the Plaintiffs missed a one-year deadline for filing a claim for larceny pursuant Bankruptcy Code § 523(a)(4). Again, the parties appear to conflate causes of action brought pursuant to state law to establish liability for a debt with causes of action under the Bankruptcy Code to except a debt from discharge. To help clear up any confusion, this Court notes that the deadline for filing a complaint to except a debt from discharge under Bankruptcy Code § 523(a)(4) is found in Federal Rule of Bankruptcy Procedure 4007(c), which sets the deadline at "no later than 60 days after the first date set for the meeting of creditors under § 341(a)."

disposition of plaintiff's property rights; and (3) damages." *Dice v. White Family Cos., Inc.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007) (internal citations omitted). However, in cases involving the conversion of money or cash, the Debtor notes that a claim for conversion will "only lie if 'identification is possible and there is an obligation to deliver the specific money in question.'" *Id.* (further citation omitted).

The Debtor asserts that because this action does not involve "rare coins" or other specifically identifiable money, the Plaintiffs will be unable to prove this requirement. However, money does not have to be rare coins to be identifiable if it is clear from account records or other evidence that specific money rightfully owned or in possession of a plaintiff was taken by the defendant without authority and used by the defendant in a manner inconsistent with the plaintiff's ownership or possession. *See, e.g., Wuliger v. Cannella Response Tele., Inc.*, 865 F.Supp.2d 836, 844 (N.D. Ohio 2011) (concluding that the acceptance of loan proceeds to which the defendant was not entitled was specific money subject to a conversion claim under Ohio law); *Tinter v. Lucik,* 876 N.E.2d 1026, 1033-34 (Ohio Ct. App. 2007) (determining that the claim of conversion was sufficient to present to the jury when the plaintiff presented evidence, through sales slips and daily summary sheets, that company funds received by the defendant through sales were not properly deposited in the company account, but recognizing that the defendant may have valid defenses such as using the funds for legitimate business repairs and expenses). *But see Taglieri v. Monasky*, 767 F. App'x 597, 605 (6th Cir. 2019) (noting that identifiable money may lose its specific identify when commingled with other funds dooming a conversion claim).

In the Complaint, the Plaintiffs set forth three claims for conversion labeled "The Forged Check" (i.e., the alleged conversion of the $39,272.15 check the Debtor drew on the Barestone account on February 19, 2016); "The Security Deposits" (i.e., Bair Build's alleged conversion of two security deposits intended for Barestone totaling $108,500); and "Other Misappropriation" (i.e., Bair Build's alleged conversion of funds from construction loan proceeds totaling approximately $147,772). Whether the funds in question in these claims are identifiable is an evidentiary issue to be determined at trial. Accordingly, the Debtor's Motion for Judgment on the Pleadings is denied in this respect.

**F.    Remaining Arguments Rely on Extraneous Facts**

In the Debtor's lengthy briefing, the Debtor includes facts not included in the Plaintiffs' Complaint or that directly contradict the Plaintiffs' allegations. As noted in Part II.(C) of this decision, these facts include the following:

a) The Debtor had full authority to write and sign the $39, 272.15 check drawn on the Bair Build account;

b)  The $39,272.15 check was not converted by the Debtor for her own benefit but was, instead, deposited into a Barestone account to pay contractors;

c) Any funds kept by Bair Build and/or the Debtor from the security deposits was a "construction management fee" that they were entitled to keep and/or the funds were used to preform renovation work;

d) Plaintiffs are not creditors of the Debtor;

e) Any damages arose after Bair Build was removed as managing member and while Kingston was managing member;

f) Any extra funds Kingston paid to complete renovations were voluntary and/or treated as "capital calls" compensated by Kingston receiving a larger percentage ownership of Barestone;

g) Kingston knew that Barestone was an underfunded risky project and that the construction was not likely to finish on schedule; and

h)  Any representations made by Bair Build to Union Savings Bank were based on future projections rather than current facts regarding the status of renovations and the budget.

[Docket Number 50].

As noted before, a motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss which tests the sufficiency of the Complaint's allegations and requires this Court to treat the Complaint's well-pleaded factual allegations as true. In accordance with that principle, extraneous matters are generally not appropriate for consideration. Fed. R. Civ. P. 12(d); *Simpson v. Champion Petfoods USA, Inc.*, 397 F.Supp.3d 952, 960 (E.D. Ky. 2019) (citing *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)).

In essence, a motion for judgment on the pleadings is only appropriate for the resolution and disposal of a case in which all material allegations of fact are undisputed leaving only questions of law. *Adkisson v. Jacobs Engineering Group, Inc.*, 342 F.Supp.3d 791, 807-808 (E.D. Tenn. 2018); *Rossi, McCreery & Assocs. (In re Abbo)*, 1993 Bankr. LEXIS 2110, at *11, 1993 WL 597970, at *5 (Bankr. N.D. Ohio Nov. 29, 1993). In this case, the Debtor's remaining arguments are not purely legal in nature but rely on facts outside of the Plaintiffs' Complaint or that directly dispute the Complaint's factual allegations. These extraneous matters are not appropriate for consideration and are excluded by this Court. *See* Fed. R. Civ. P. 12(d). [10] Accordingly, the remainder of the Debtor's arguments do not supply a basis for judgment on the pleadings.

---

[10] Rather than exclude the extraneous matters, this Court could convert the Debtor's Motion to one for summary judgment and allow the parties additional time for supplementation and response. *See* Fed. R. Civ. P. 12(d). However, because the parties appear to dispute material facts, and summary judgment is not an effective vehicle to resolve factual disputes, this Court declines to convert the Motion.

**G.     Debtor's Notice Filed After the Reply**

Following the filing of her reply, the Debtor filed a "*Notice of Filing Declaration of Debtor Suzanne Bair*" [Docket Number 54] ("Notice"). In the Notice, the Debtor alleges that an attached IRS form proves that Kingston was not damaged because it elected to be made whole by transferring Bair Build's membership interest in Barestone to itself. As noted in the prior section, the Debtor's extraneous facts and evidentiary materials are not appropriate for consideration on a motion for judgment on the pleadings. Accordingly, this Court excludes the Notice from consideration. *See* Fed. R. Civ. P. 12(d).

**IV.     CONCLUSION**

In her Motion, the Debtor asserts that this adversary proceeding involves "nothing more than a garden variety shareholder / member dispute between Kingston and non-party, Bair Build, LLC." [Docket Number 50, p. 4]. Whether true will depend on facts proven at trial rather than extraneous matters that may not be considered, and factual disputes that cannot be resolved, on a motion for judgment on the pleadings.

Accordingly, *Debtor's Amended Motion for Judgment on the Pleadings* [Docket Number 50] is DENIED.

**SO ORDERED.**

Distribution List:

> L. Joshua Davidson, Esq.
> Christopher P. Finney, Esq.
> Brian C. Shrive, Esq.
> Jeffrey M. Nye, Esq.
> Paul T. Saba, Esq.